No. 98,023

CARROTHERS CONSTRUCTION COMPANY, L.L.C., *Appellant*, v.
CITY OF SOUTH HUTCHINSON, KANSAS, *Appellee*.

(207 P.3d 231)

Opinion filed May 22, 2009.

*Anthony M. Singer*, of Woodard, Hernandez, Roth & Day, L.L.C., of Wichita, and *Richard W. Miller*, of Miller Law Firm, P.C., of Kansas City, Missouri, argued the cause, and *Stephen R. Miller* and *Christine A. Louis*, of the same firm, and *Patrick J. Kaine*, of Dysart Taylor Cotter & McMonigle, P.C., of Kansas City, Missouri, were with Richard W. Miller on the briefs for appellant.

*Michael J. Norton*, of Foulston Siefkin LLP, of Wichita, argued the cause, and *James D. Oliver*, of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: This is an appeal from a district court's decision on cross-motions for summary judgment in a contract case. The district court awarded liquidated damages against a construction company for failure to timely complete a municipal wastewater treatment facility. The issue is the extent to which liquidated damages are enforceable under the parties' contract. The Court of Appeals affirmed the district court. This court granted the construction company's petition for review. Our jurisdiction arises from K.S.A. 20-3018(b).

We affirm. In doing so, we explain below that the reasonableness of a liquidated damages clause in a contract deliberately entered into should be determined with regard to the conditions of the parties existing at the time the contract was executed, not from hindsight after the contract is breached. In addition, we reject the construction company's argument that liquidated damages for completion delays cannot be assessed after the owner occupied the new facility.

## Factual and Procedural Background

The material facts are not in dispute. Carrothers Construction Company, L.L.C., entered into a contract with the City of South Hutchinson to construct a $5,618,000 wastewater treatment facility to replace the City's existing plant. The contract contained completion dates as well as a liquidated damages provision for delays in meeting the completion dates.

Carrothers has acknowledged it did not meet those bargained-for completion deadlines, and it conceded at oral argument an assessment for some liquidated damages under the contract is appropriate. Accordingly, the dispute before this court reduces itself down to deciding whether the district court was correct as to exactly how much the liquidated damages should be under the contract.

The provision labeled "Liquidated Damages" is found in the contract at Section 3.3 and is plainly identified. In it, Carrothers and the City agreed as follows:

"3.3 *Liquidated Damages.* OWNER and CONTRACTOR recognize that time is of the essence of this Agreement and that OWNER will suffer financial loss if the Work is not started and completed within the times specified in paragraphs 3.1 and 3.2 above, plus any extensions thereof allowed in accordance with Article 12 of the General Conditions. They also recognize the delays, expense and difficulties involved in proving the actual loss suffered by OWNER if the Work is not completed on time. Accordingly, instead of requiring any such proof, OWNER and CONTRACTOR agree that as liquidated damages for delay (but not as a penalty) CONTRACTOR shall pay OWNER Six Hundred Dollars ($600.00) for each day that expires after the time specified in paragraph 3.1 for the work to start, and Eight Hundred Fifty Dollars ($850.00) for each day that expires after the time specified in paragraph 3.2 for Substantial Completion until the Work is substantially complete. After Substantial Completion, if CONTRACTOR shall

neglect, refuse or fail to complete the remaining Work within the time specified in paragraph 3.2 for completion and readiness for final payment or any proper extension thereof granted by OWNER, CONTRACTOR shall pay OWNER Eight Hundred Fifty Dollars ($850.00) for each day that expires after the time specified in paragraph 3.1 for completion and readiness for final payment."

The standard general conditions of the construction contract (see Section 8.5 incorporating general conditions) define the term "Work" in Article 1 as follows:

"48. *Work*—The entire completed construction or the various separately identifiable parts thereof required to be provided under the Contract Documents. Work includes and is the result of performing or providing all labor, services, and documentation necessary to produce such construction, and furnishing, installing, and incorporating all materials and equipment into such construction, all as required by the Contract Documents."

Article 1, entitled "Work," further provides:

"The project for which the Work under the Contract Documents may be the whole or only a part is generally described as follows:

Construct wastewater treatment liquid process facilities to replace the existing liquid process facilities. Construct a maintenance building, site piping, other site utilities, site grading, and system controls. Drain, clean existing basins for future use and remove obsolete equipment. The capacity of the new process facilities will be 2 MGD. A new computer based control system for the improvements is included in the Work."

The contract documents also define the term "Substantial Completion" as:

"43. *Substantial Completion*—The time at which the Work (or a specified part thereof) has progressed to the point where, in the opinion of ENGINEER, the Work (or a specified part thereof) is sufficiently complete, in accordance with the Contract Documents, so that the Work (or a specified part thereof) can be utilized for the purposes for which it is intended."

The term "final completion" is not defined in the contract. But in describing how the contractor may apply for final payment under Section 14.07 A.1., the agreement provides:

"A. *Application for Payment*. 1. After CONTRACTOR has, in the opinion of ENGINEER, satisfactorily completed all corrections identified during the final inspection and has delivered, in accordance with the Contract Documents, all maintenance and operating instructions . . . CONTRACTOR may make application for final payment following the procedure for progress payments."

The provisions recited above show at the time the contract was entered into by the parties, the City and Carrothers agreed: (1) Time was of the essence in completing the project; (2) actual damages would be difficult to ascertain, so the parties chose to use the liquidated damages provision if a breach occurred rather than requiring proof of actual damages; (3) the same per diem amount of liquidated damages applicable to a failure to achieve substantial completion would apply to a failure to achieve final completion; (4) the $850 per diem liquidated damages amount for failure to achieve either substantial or final completion was not a penalty; and (5) the project engineer's opinion would be relied upon by both parties to determine whether the completion dates were met. The record reflects Carrothers had multiple opportunities to object to the liquidated damages provision during the bidding and contracting process, but it did not.

The engineer for this project was MKEC Engineering Consultants, Inc. (MKEC), which also assisted in drafting the contract. An MKEC employee, David Chase, performed the calculations for the liquidated damages provision. Lynn Moore, MKEC's manager of environmental engineering, discussed those calculations with Chase and approved the liquidated damages provision. MKEC considered several factors in determining prospective liquidated damages caused by delay in the work completion including: (1) the City's cost to monitor the project; (2) additional labor costs for city employees, environmental department staff, structural and electrical staff, and controls department staff; (3) additional utilities use; (4) costs to engage another consultant; (5) legal expenses; (6) equipment rental to address flow situations; (7) action by the Kansas Department of Health and Environment if the treatment plant failed to operate within permit limits at the time construction should be finished; and (8) other unknowns if the project was not timely completed. In addition, MKEC considered the project length, the estimated contract value, the general practices by MKEC, and the amounts agreed to between contractors and owners on other comparable projects.

Based on these considerations, MKEC recommended liquidated damages be set at $850 per day for failure to meet both the sub-

stantial completion deadline and the final completion deadline. Moore testified the same $850 per day liquidated damages amount for both substantial completion and final completion was appropriate because "all of the same potential risks were still in place with either completion date, and so it was appropriate to use the same number." Both the City and Carrothers agreed to MKEC's recommendation by accepting the contract.

Carrothers executed the contract with the City to construct the wastewater treatment facility for $5,618,000. On April 22, 2002, the City issued a notice to proceed with construction. The agreement provided the work, as defined in the contract, was to be substantially complete within 450 days after the notice to proceed and was to be complete and ready for final payment within 480 days after the notice to proceed. Accordingly, Carrothers was to reach substantial completion by July 15, 2003, and final completion by August 14, 2003. Change orders issued during construction added 11 days to these deadlines, thus extending the substantial completion date to July 26, 2003, and final completion to August 25, 2003. Carrothers acknowledges it failed to meet either deadline.

The City put the new plant into limited operation by November 10, 2003, and simultaneously shut down and stopped using the old wastewater treatment facility by that same date. There was no loss of water service when this simultaneous transition occurred from the old facility to the new facility. But the new facility was not completely operational by this date, and the computerized control system was not finished. These limitations required the City to operate the new facility manually and without all of the new safety features required by the contract.

At a progress meeting on December 8, 2003, the meeting minutes reflect the requirements for substantial completion were discussed. Carrothers was informed the project would be deemed to reach substantial completion "when the handrails and walkways are complete, both sides of the process basin are operational, and the control system is operational." As project engineer, Moore followed up on December 11, 2003, with a letter to Carrothers itemizing the tasks to be completed to attain substantial completion.

MKEC issued the substantial completion certificate on January 12, 2004, when the control system and the safety features were fully installed. The next day, Carrothers delivered the operating manuals for the computerized control system. MKEC determined final completion was reached on January 13, 2004, when those manuals were provided to the City.

Carrothers subsequently submitted a final payment application for the project. MKEC recommended the City withhold $145,350 in liquidated damages. This amount was based on the 170 days between July 26, 2003, which was the revised substantial completion deadline, and January 12, 2004, which was the date when MKEC determined Carrothers reached substantial completion. There was 1 additional day until the project was finally completed on January 13, 2004. Multiplying these 171 days by $850 per day equals $145,350. The City accepted MKEC's recommendation and withheld the liquidated damages. Carrothers objected and demanded full payment.

The dispute over liquidated damages was not resolved, so Carrothers filed suit to recover the withholding. Carrothers alleged the City breached its contract by refusing full payment. Carrothers also sought a declaratory judgment concerning the enforceability and reasonableness of the liquidated damage provision. The City filed a counterclaim and alleged Carrothers breached the contract by failing to timely complete the project.

After the parties engaged in discovery, the City filed a motion for summary judgment, arguing Carrothers could not sustain its burden to prove the liquidated damages clause constituted an unenforceable penalty. Carrothers filed a cross-motion for summary judgment, arguing the liquidated damages provision was a penalty and had no relation to the actual damages suffered. The district court granted summary judgment in the City's favor, finding the contract was unambiguous and the liquidated damages amount reasonable in relation to the potential injuries from delays in completing the wastewater treatment facility. After unsuccessfully moving to have the district court reconsider its ruling, Carrothers timely appealed.

The Court of Appeals affirmed the district court, concluding the district court did not err in granting summary judgment to the City. *Carrothers Constr. Co. v. City of South Hutchinson*, 39 Kan. App. 2d 703, 184 P.3d 943 (2008). In doing so, and as will be discussed further below, the panel recognized that prior Court of Appeals decisions suggest liquidated damage clauses should be analyzed both from a prospective viewpoint based on the parties' circumstances at the time of contracting, as well as retrospectively after the breach to determine whether the liquidated damages bear some reasonable relationship to the actual injury caused by the breach. 39 Kan. App. 2d at 712-13 ("[T]his court has recognized that a retrospective analysis of a liquidated damages clause is also appropriate.").

Carrothers filed a petition for review, which this court granted. Carrothers now argues both the district court and the Court of Appeals erred as a matter of law because: (1) The contract terms actually define substantial completion as the date when the City took over the new facility, put it into operation, shut down the old facility, and effectively gained the beneficial use of the new facility; (2) the liquidated damages provision is unreasonable and constitutes a penalty because it bears no reasonable relationship to the actual injury caused by Carrothers' breach after the date the City gained beneficial use from the facility; (3) the $850 per diem amount applied to delays in achieving final completion is unreasonable as a matter of law because it is the same amount applicable for delays in achieving substantial completion; and (4) the City has waived its right to receive liquidated damages as a matter of law after it occupied and began using the new facility.

### Standard of Review

The standard for reviewing a district court's decision granting summary judgment is well known:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for

summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Miller v. Westport Ins. Corp.*, 288 Kan. 27, Syl. ¶ 1, 200 P.3d 419 (2009).

To the extent there is no factual dispute, appellate review of an order granting summary judgment is unlimited. *Polson v. Farmers Ins. Co.*, 288 Kan. 165, Syl. ¶ 1, 200 P.3d 1266 (2009).

The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 431, 109 P.3d 1146 (2005). The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the contract language without applying rules of construction. *Anderson v. Dillard's, Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007). Interpreting a written contract that is free from ambiguity is a judicial function and does not require oral testimony to determine the contract's meaning. Ambiguity in a contract does not appear until two or more meanings can be construed from the contract provisions. *Gore v. Beren*, 254 Kan. 418, 426-27, 867 P.2d 330 (1994).

Finally, this case requires us to examine the propriety of liquidated damages. The Court of Appeals has previously determined this is a question of law that an appellate court reviews de novo. *IPC Retail Properties v. Oriental Gardens, Inc.*, 32 Kan. App. 2d 554, 561, 86 P.3d 543 (2004); *Luminous Neon, Inc. v. Parscale*, 17 Kan. App. 2d 241, 242, 836 P.2d 1201 (1992); *Kvassay v. Murray*, 15 Kan. App. 2d 426, Syl. ¶ 1, 808 P.2d 896, *rev. denied*, 248 Kan. 996 (1991). We agree.

### When Did Carrothers Achieve Substantial Completion?

Carrothers' first argument is that the district court erred in awarding the City liquidated damages by using a substantial completion date of January 12, 2004. Carrothers asserts it really achieved substantial completion, as that term is defined under the contract documents, by November 3, 2003, when the construction

project progressed to the point where the City was able to occupy the new facility, shut down the old treatment plant, and simultaneously transition the City's water service using the new facility.

In making this argument, Carrothers acknowledges it did not achieve substantial completion by the contractually required date of July 26, 2003. At oral argument, Carrothers' counsel conceded the contractor owes liquidated damages at the $850 per diem amount specified in the parties' agreement for the period of time between July 26, 2003 and November 3, 2003, when, Carrothers says, the new plant began operations. We note an immaterial factual discrepancy between the parties as to whether the plant began these limited operations on November 3, as claimed by Carrothers, or November 10, as testified to by Moore, the project engineer. But it is sufficient here to note this entire controversy reduces itself down rather quickly from a $145,350 assessment to approximately $61,500 based on Carrothers' admissions.

With this acknowledgment, Carrothers argues that under the contract documents as written, it achieved substantial completion by November 3, 2003. Quoting from a selected portion of the contract's definition of "substantial completion," Carrothers says it was in November 2003 that "the Work (or a specified part thereof)" actually was being used "for the purposes for which it is intended." Carrothers argues the City began using the new facility in November 2003 "for the purposes for which it is intended" because the City shut down the old facility and switched its operations to the new plant, even though the City had to operate the facility manually and did not have in operation the computer-based control system specified in the contract.

We reject Carrothers' contention. To make its argument, Carrothers ignores the language, taken as a whole, of the plain and unambiguous agreement between these parties. As quoted above, this contract expressly states: "A new computer based control system for the improvements is included in the Work." To accept Carrothers' interpretation would require us to overlook the undisputed fact that the computerized control system was not operational until January 12, 2004. This asks too much, given the agreement between the parties and its clear expression of the parties'

intent as to what performance was required to substantially complete the work.

In addition, Carrothers would have us give no meaning to the specific provision adopted by both parties that delegated to their project engineer the task of determining when the work would be deemed "sufficiently complete in accordance with the Contract Documents" that it could be "utilized for the purposes for which it is intended." When the contracting parties clearly intended to make such a delegation, this court should respect those wishes absent a showing the engineer acted in bad faith when making this determination.

No evidence exists in this record that the project engineer was acting in bad faith. MKEC determined Carrothers did not substantially complete the project until January 12, 2004, because that was the date when Carrothers finished its work on the control system and other safety features. MKEC's determination is consistent with the plain language contained within the contract documents and the undisputed facts set out in the parties' cross-motions for summary judgment. Since Carrothers was willing to accept the project engineer's determination as to completion dates when it initially contracted with the City, this court sees no reason now, and on the basis of this record, how it can contractually reject those determinations.

In summary, we find the district court and Court of Appeals did not err in determining July 26, 2003, was the date Carrothers was contractually required to substantially complete the project. In addition, we find the district court and Court of Appeals correctly determined January 12, 2004, was the date when substantial completion actually was achieved based on the undisputed facts in this case and the plain and unambiguous language in the agreement. Accordingly, it was not error to find Carrothers was 170 days late in substantially completing this project pursuant to these contract terms.

*Is the liquidated damages clause really a penalty?*

Next, Carrothers argues the liquidated damages clause is unreasonable and constitutes a penalty because the contractually speci-

fied damages bear no reasonable relationship to the actual injury suffered by the City after it occupied the new plant and switched over its municipal services from the old plant. Carrothers' argument focuses entirely on the time period after, it claims, the City obtained beneficial use from the new facility in November 2003.

Carrothers contends Kansas law imposes a "two hurdle" test for enforceability of a liquidated damages provision. Such a provision is invalid, Carrothers asserts, unless it is both: (1) a reasonable prospective estimate of damages for the breach of contract; and (2) reasonable considering, retrospectively, the damages actually incurred. Carrothers argues that once the City started using the new wastewater treatment plant, the contractually stated liquidated damages necessarily became a penalty under the second prong of its proposed test because the City was suffering no actual harm after this transition.

We disagree and hold the retrospective analysis is unnecessary in determining whether a liquidated damages clause is a penalty. The better test, we believe, is to determine the reasonableness of a liquidated damages clause as of the time the contract was executed, not with the benefit of hindsight. As noted previously by this court, a liquidated damages clause in a contract is an advance settlement of the anticipated actual damages arising from a future breach. *Railroad Co. v. Gaba*, 78 Kan. 432, 435-436, 97 Pac. 435 (1908). Such provisions allow contracting parties to protect themselves against the difficulty, uncertainty, and expenses that necessarily follow judicial proceedings when trying to ascertain actual damages. *Oriental Gardens*, 32 Kan. App. 2d at 563. Given this desirable goal, it is well established that parties may stipulate at the time of contracting to a set damages amount for a breach of that contract, as long as the liquidated damages provision is not a penalty. See *White Lakes Shopping Center, Inc. v. Jefferson Standard Life Ins. Co.*, 208 Kan. 121, 126-128, 490 P.2d 609 (1971); *Beck v. Megli*, 153 Kan. 721, 726, 114 P.2d 305 (1941); *Gregory v. Nelson*, 147 Kan. 682, Syl., 78 P.2d 889 (1938); *Gaba*, 78 Kan. at 435-36.

The distinction between a contractual penalty and a provision for liquidated damages is that a penalty, in effect, is a security for performance, while a provision for liquidated damages requires a

sum certain to be paid in lieu of performance. *Erickson v. O'Leary*, 127 Kan. 12, 14, 273 Pac. 414 (1929). In considering the issue, this court previously stated:

"In determining whether contractual agreements are to be treated as penalties or as liquidated damages, courts look behind the words used by the contracting parties to the facts and the nature of the transaction. The use of the terms 'penalty' or 'liquidated damages' in the instrument is of evidentiary value only. It is given weight and is ordinarily accepted as controlling unless the facts and circumstances impel a contrary holding. [Citations omitted.] The instrument must be considered as a whole, and the situation of the parties, the nature of the subject matter and the circumstances surrounding its execution taken into account. There are two considerations which are given special weight in support of a holding that a contractual provision is for liquidated damages rather than a penalty—the first is that the amount stipulated is conscionable, that it is reasonable in view of the value of the subject matter of the contract and of the probable or presumptive loss in case of breach; and the second is that the nature of the transaction is such that the amount of actual damages resulting from default would not be easily and readily determinable. [Citations omitted.]" *Beck*, 153 Kan. at 726.

In *TMG Life Ins. Co. v. Ashner*, 21 Kan. App. 2d 234, 250, 898 P.2d 1145 (1995), the Court of Appeals ruled the burden of proving a liquidated damages clause is an unenforceable penalty falls on the party challenging the provision. See *Oriental Gardens*, 32 Kan. App. 2d at 561. We agree. By placing the burden of proof on the party challenging a liquidated damages clause, we promote a public policy favoring settlement and avoidance of litigation, and allowing parties to make, and live by, their own contracts. See *White Lakes Shopping Center*, 208 Kan. at 126-28; *Anderson v. Rexroad*, 180 Kan. 505, 511-15, 306 P.2d 137 (1957).

In addressing these two considerations (reasonableness and difficulty of ascertaining actual damages), the Court of Appeals noted the first factor was resolved in the City's favor as follows:

"Here, the subject matter of the contract was the construction of a new public wastewater treatment facility for over $5,600,000. As the City points out, the total liquidated damages of $145,350 for a nearly 6-month delay is less than 3% of the total contract amount. The probable or presumptive loss in case of delay included the City's cost to monitor the project, additional labor costs, additional use of utilities, the cost of engaging another consultant, legal expenses, equipment rental to address flow situations, possible action by the KDHE, and other unknowns in the event the project was not completed on time. MKEC anticipated having an

engineer's representative on site daily if the facility was not completed on time, as well as additional environmental department staff, structural and electrical staff, and controls department staff. In light of these potential actual expenses, the amount set forth in the contract of $850 per day is reasonable when viewed prospectively." *Carrothers*, 39 Kan. App. 2d at 713.

As to the second consideration, the Court of Appeals stated the following in deciding the amount of actual damages from a default would not be easily and readily determinable:

"Here, Moore stated in his deposition that MKEC always includes a liquidated damages clause in its public works contracts because it is difficult to determine what damages would be incurred and it could be costly to prove those damages in court. The district court noted the complexity of the project and its attendant risks of harm and damages. As demonstrated by the many factors MKEC considered in determining the appropriate amount of liquidated damages, the actual damages would have been difficult to calculate at the time the parties entered into the contract. Therefore, this second factor also favors enforceability of the liquidated damages provision." 39 Kan. App. 2d at 714.

We agree with the Court of Appeals' analysis as to these two considerations. It is clear from the facts the project engineer attempted as a part of the contract drafting process to calculate estimated damages if there were a breach. It also is clear a project with this level of complexity would present significant difficulties in trying to calculate actual damages. Under these circumstances, the parties legitimately could agree in the interests of necessity, economy, and convenience to set the damages level in advance, which is what they did.

We would supplement these points only by emphasizing that we are dealing here with a contract for the construction of public utility service facilities. It is uniquely difficult to calculate damages to the general public interest caused by a contractor's breach of its agreement to provide public improvements. This should be an important consideration in such cases and weigh favorably in finding a liquidated damages provision to be reasonable. Kansas has long recognized the protection of the public interest is a proper consideration in determining validity of a liquidated damages provision. *Kansas City v. Industrial Gas Co.*, 138 Kan. 755, 762-63, 28 P.2d 968 (1934); *U.S.D. No. 315 v. DeWerff*, 6 Kan. App. 2d 77, Syl. ¶ 3, 626 P.2d 1206 (1981).

But Carrothers promotes an additional retrospective analysis by which to judge the reasonableness of this liquidated damages provision. Under this approach, Carrothers argues, a court must determine what actual damages resulted from its failure to achieve the required completion dates, and then compare those actual damages to the liquidated damages calculations set out in the contract. We note that courts are divided in the approaches employed to determine this issue. See *Kelly v. Marx*, 694 N.E.2d 869, 873-74 (Mass. App. 1998), surveying state by state the applicable liquidated damages rules in place at that time.

In support of its position, Carrothers claims the Tenth Circuit Court of Appeals recently found Kansas law applies this additional retrospective test, citing *Hutton Contracting Co. v. City of Coffeyville*, 487 F.3d 772 (10th Cir. 2007). Carrothers is wrong in making this claim. The *Hutton* court expressly did not adopt the retrospective test. Instead, the court indicated Kansas courts have not definitely answered the question whether enforceability of a liquidated damages provision should be determined prospectively only or whether Kansas courts would also apply a retrospective analysis. 487 F.3d at 781 ("[O]ur review of Kansas cases finds no definitive discussion of whether Kansas courts would apply a supplemental retrospective analysis.").

To that end, our decision in this case is intended to lay aside any further doubt and embrace a prospective analysis as the sole basis for evaluating a liquidated damages provision in a contract. To the extent any prior decisions of our Court of Appeals have contributed to that doubt by adding a retrospective test in their determination of this issue, they are overruled as to this limited point. See *Carrothers*, 39 Kan. App. 2d at 712-13; *Oriental Gardens*, 32 Kan. App. 2d at 564; *Luminous Neon*, 17 Kan. App. 2d at 243.

The prospective approach is particularly appropriate in circumstances such as those presented here, when an evaluation was made prior to contract formation as to the probable loss resulting from delay, the parties' clear intent to use liquidated damages as the contractual vehicle in case of a delay because actual damages would be difficult to ascertain, and the parties' agreement as to a per diem amount for delays, which then set the parties' respective risks. To

impose the "two hurdle" test advocated by Carrothers would deny the parties' obvious intent and deny the City the benefit of its bargain. If the amount of actual damages is made an issue in the enforcement of every contract with a liquidated damages provision, the very purpose of the agreement is undermined. As noted in the Restatement (Second) of Contracts § 356, comment A, p. 157 (1979): "The enforcement of such provisions for liquidated damages saves the time of courts, juries, parties and witnesses and reduces the expense of litigation."

Here, the parties intended to avoid such expense and uncertainty if a delay occurred. Their intent should be respected. We affirm the findings by the Court of Appeals and district court that the liquidated damages clause did not constitute a penalty.

*Is the $850 per diem reasonable for delays in final completion?*

Next, Carrothers argues the contract's liquidated damages clause is unreasonable as a matter of law because the $850 per diem amount that is applicable to delays in achieving final completion is the same for delays in achieving substantial completion. In support of its contention, Carrothers cites *DeWerff*, 6 Kan. App. 2d at 80 (A lack of calculation as to actual damages is assumed when the stipulated damages amount is the same for a total or partial breach or for minor or major contract provisions.), and *Oriental Gardens*, 32 Kan. App. 2d at 562 (An accelerated rent provision was unenforceable because it applied to all breaches of contract, however major or minor, and it had no reasonable relationship to actual injury.).

But as discussed above, Carrothers' argument applies the wrong legal test to these facts. Here, the contract language clearly expressed the parties' intent that liquidated damages continue past substantial completion and delegated to the project engineer the task of determining when final payment was authorized. Further, the project engineer testified the damages incurred for a delay in substantial completion compared on a prospective basis at the time of contracting with the damages for a delay in final completion. Indeed, he testified there was really no difference in the risk to

the City between a late substantial completion date and a final completion date.

Whether it was reasonable to use the same $850 per diem amount for delays in final completion as was being used for substantial completion is to be determined using the prospective analysis, discussed above, based on the conditions of the parties when the contract was formed. Accordingly, it is not relevant that the final completion delay damages, which amounted to a single day's assessment of $850, resulted from Carrother's failure to simply deliver the operating manuals. The test for this contractual provision's reasonableness is whether: (1) at the time of contracting it would appear conscionable to assess $850 per day in liquidated damages for the period of time between substantial and final completion in view of the value of the contract and the probable or presumptive loss in case of a breach; and (2) actual damages for that time period would be difficult to calculate.

In reviewing the summary judgment record, the district court noted that had the City's old treatment facility failed prior to final completion, "the danger posed to citizenry would have been incalculable." Given the public service nature of this project, the parties' clear intent to make liquidated damages applicable to this particular time period, and the project engineer's evaluation of the parties' relative risks when viewed at the time of contracting, we agree with the Court of Appeals and the district court that the $850 per diem assessment for the 1-day delay in achieving final completion was reasonable under the circumstances.

*Did the City waive its right to further liquidated damages by occupying the facility?*

Finally, Carrothers contends as a matter of law that the City waived its right under the contract to continue with liquidated damages after the City elected to occupy the new facility and began using it. As to this argument, Carrothers would have us rewrite the parties' contract as an operation of law and relieve Carrothers from the consequences imposed by the plain and unambiguous language in its contract. We decline to do so.

In support of its argument, Carrothers cites this court to no Kansas cases applying the legal principle it is espousing, and we are aware of none. Instead, Carrothers refers us to opinions in other states such as *Stone v. City of Arcola*, 181 Ill. App. 3d 513, 536 N.E.2d 1329 (1989); *Perini Corp. v. Greate Bay Hotel & Casino, Inc.*, 129 N.J. 479, 610 A.2d 364 (1992); *Page v. Travis-Williamson County Water C. & I. Dist.*, 367 S.W.2d 307 (Tex. 1963); and *S.L. Rowland Constr. Co. v. Beall Pipe and Tank Corp.*, 14 Wash. App. 297, 540 P.2d 912 (1975). In sum, these cases hold that when a contractor achieves substantial completion and has only minor repairs, adjustments, or finishing work remaining, the full assessment of liquidated damages may constitute gross unfairness.

But these decisions do not apply to the undisputed facts in this case. Here, Carrothers would seek to invoke these decisions from other jurisdictions to block liquidated damages after November 3, 2003, when it says the City began using the new treatment facility. But the new facility still did not have in operational condition the computer-based control system and other significant installations, including many safety features, expressly required by the contract. These shortcomings may not be described fairly as trivial or relegated to a characterization of mere finishing work. They were substantial obligations under the contract agreed to by the parties.

Accepting Carrothers' argument in this instance would defeat the express language in the contract, the parties' clear intent as shown by that language, and the important public policy considerations favoring liquidated damages clauses. We decline to adopt a rule that operates solely to invalidate liquidated damages clauses that were freely entered into just because damages would be applicable after occupancy. We believe the better rule is to require a liquidated damages clause applicable to a delay in achieving final completion to withstand the prospective analysis described in this opinion.

We affirm the district court and the Court of Appeals for the reasons stated.