(263 P.3d 847)

No. 104,835

E. Leon Daggett, *Appellant*, v. Board of Public Utilities of the Unified Government of Wyandotte County/Kansas City, Kansas, *Appellee*.

Opinion filed September 16, 2011.

*Mark Beam-Ward*, of Beam-Ward, Kruse, Wilson, Wright & Fletes, LLC, of Overland Park, for appellant.

*Carl A. Gallagher*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellee.

Before Hill, P.J., Green and Bruns, JJ.

Green, J.: E. Leon Daggett appeals from the trial court's ruling in favor of the Board of Public Utilities (BPU) on his breach of contract claim. On appeal, the BPU argues that this court does not

have jurisdiction to hear this appeal because Daggett failed to timely file his appeal. We disagree. Daggett contends that the BPU breached the settlement agreement when it failed to ensure that Daggett received the benefit of its contributions to the pension plan. We agree. Accordingly, we reverse and remand to the trial court with directions to grant summary judgment in favor of Daggett for breach of contract and to calculate damages.

Daggett was the general manager of the BPU for 10 years. Daggett was terminated from his employment on December 21, 2005. On March 22, 2006, the BPU drafted a settlement and release agreement that would pay Daggett's salary, deferred compensation, and pension contributions through June 30, 2008.

On July 1, 2008, when Daggett attempted to receive his pension benefits, he discovered that the pension contributions paid by the BPU were not in his account. The pension contributions made by Daggett had been deducted from his paychecks, and the BPU also made its contributions to the pension fund; however, those contributions were not accepted by the pension fund. The record does not indicate why the contributions were not accepted or what happened to the contributions after they were rejected. At oral argument, the BPU admitted that the contributions it made to the pension plan on behalf of Daggett were returned to the BPU and that Daggett's contributions were returned to him. As a result, Daggett receives approximately $1,000 less a month than he would have received if the contributions had been accepted.

Daggett sued the BPU claiming, among other things, breach of contract. Daggett moved for summary judgment, which the trial court denied. The trial court found that the BPU made the required contributions to the pension fund, and, therefore, it did not breach the settlement agreement between Daggett and the BPU.

*Does this Court Have Jurisdiction to Consider the Merits of this Appeal?*

The BPU filed a motion to dismiss Daggett's appeal before our court. The BPU argued that Daggett failed to timely file his appeal. The BPU maintained that the trial court entered a final order on the merits on June 15, 2010, which made Daggett's appeal filed on

August 12, 2010, untimely. Our court denied the motion and held that the judgment below was not final until the ruling on the motion for attorney fees.

In its brief, the BPU again argues that this court does not have jurisdiction because Daggett failed to timely file his appeal. The BPU does not raise any new arguments in its brief, and it relies on the same authority that it cited to in its motion to dismiss. Because our court already addressed this issue when it denied the motion, we will not address it again. We will simply reiterate our holding that this court has jurisdiction to hear this appeal because Daggett's judgment was not final until the ruling on the motion for attorney fees had been decided.

*Did the BPU Breach the Settlement Agreement?*

Daggett contends that the BPU breached the settlement agreement when it failed to make contributions to the pension account for Daggett's benefit. There is no dispute that the BPU paid the contributions; however, Daggett argues that the BPU breached the settlement agreement because he did not receive the benefit of those contributions. Daggett maintains that the intent of the settlement agreement was for him to receive a benefit from the contributions and because that did not happen, the agreement was breached.

A breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 374, 552 P.2d 885 (1976). Where there are no disputed material facts, the determination of whether a party breached the contract is a question of law and is appropriate for summary judgment. *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 154, 959 P.2d 894 (1998). Where there are no disputed facts and the appellate court is required to interpret and give legal effect to a written contract, appellate review of an order regarding summary judgment is de novo. *Katzenmeier v. Oppenlander*, 39 Kan. App. 2d 259, 263, 178 P.3d 66, *rev. denied* 286 Kan. 1178 (2008).

"The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the

intent of the parties is to be determined from the contract language without applying rules of construction." *Carrothers Constr. Co. v. City of South Hutchinson,* 288 Kan. 743, 751, 207 P.3d 231 (2009).

Further, the interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision but by construing and considering the entire contract from its four corners. *City of Arkansas v. Bruton,* 284 Kan. 815, 832-33, 166 P.3d 992 (2007). " 'The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. [Citations omitted.]' " *Wichita Clinic v. Louis,* 39 Kan. App. 2d 848, 853, 185 P.3d 946, *rev. denied* 287 Kan. 769 (2008).

### Interpretation of Settlement and Release Agreement

In his brief, Daggett contends that the intent of the parties is clear in that the pension contributions were to be made to benefit Daggett. Daggett argues that because he did not receive the benefit of those contributions, the BPU failed to perform a duty arising under the agreement. Daggett further contends that the intent of the agreement was not for the BPU to make meaningless contributions, only to have them returned to the BPU 2½ years later.

On the other hand, the BPU argues that it complied with the settlement agreement because it made the contributions each month as required. The BPU contends that all it was required to do was to make those contributions and that what happened to those contributions after it made them was out of its control.

As a general rule, a contract must be interpreted in light of its provisions, and every provision must be construed, if possible, to be consistent with every other provision and to give effect to all. *Wiles v. Wiles,* 202 Kan. 613, 619, 452 P.2d 271 (1969). The terms of a contract should be construed to give effect to the intention of the parties when they entered into the contract, and this must be determined from the four corners of the contract itself. 202 Kan. at 619.

The first applicable portion of the Settlement and Release Agreement is section 1(c), which provides as follows: "Until June 30, 2008, Mr. Daggett and the Board shall continue to make con-

tributions *for the benefit* of Mr. Daggett to the pension plan currently administered by the Board and Pension Trustees of the Board in such amounts as are prescribed for all employees of the Board." (Emphasis added.)

The Settlement and Release Agreement further states in Section 20 that the parties agree to cooperate in good faith. Section 20 provides as follows:

"The Board and Mr. Daggett agree to cooperate in good faith to effectuate all the terms and conditions of this Agreement, including doing or causing their agents and attorneys to do whatever is *reasonably necessary* within the contemplation of this Agreement to effectuate the signing, delivery, execution, filing, recording, and entry of any documents as may be necessary to conclude any outstanding claims, to release the parties as contemplated herein, to dismiss with prejudice any pending actions, and to otherwise perform the terms specified in this Agreement."

The trial court ruled in favor of the BPU and held that because the BPU made the contributions to the pension fund, it upheld its end of the bargain. The trial court stated: "The Defendant [the BPU] agreed to make the payments and it made the payments and the fact that the pension fund refused to accept the payments had nothing to do with the issue of whether Defendant had breached its agreement."

In the trial court's memorandum order denying plaintiff's [Daggett] motion to reconsider, the court stated:

"The Defendant, it is agreed by the parties, made the payments. In so doing, the Defendant met its contractual obligation. That seemed to be so obvious that the Court attempted to assure itself that there was not some subtlety that was being overlooked, thus the concededly unnecessary wanderings among legal theories in that portion of the opinion."

The trial court's legal conclusion is contrary to the intent of the parties.

The trial court has a duty to ascertain the intent of the parties in a contract dispute. It clearly failed to do so in this case. The trial court somehow disconnected the BPU's duty to make the contributions from what the contributions were being made for. The only way to reach the trial court's conclusion is to completely ignore the phrase "for the benefit of Mr. Daggett." The trial court's interpre-

tation implicitly renders superfluous the statement "the Board shall continue to make contributions *for the benefit* of Mr. Daggett."

Although it is undisputed that the BPU made the required contributions to the pension fund, the question then becomes whether those contributions, accepted or not, satisfied BPU's contractual obligations to Daggett.

The key language to focus on in the settlement agreement is "for the benefit of Mr. Daggett." As stated earlier, the BPU complied with the agreement by making the required contributions; however, Daggett did not receive the benefit of those contributions. In fact, the BPU's contributions were returned to the BPU instead of to Daggett after the pension board rejected them. The term "benefit" is not defined in the agreement; therefore, a dictionary definition can be used to determine the common meaning of the term. "Benefit" is defined as follows: "a payment or service provided for under an annuity, pension plan, or insurance policy." Merriam-Webster's Collegiate Dictionary 114 (11th ed. 2003).

Daggett entered into this settlement agreement with the understanding that these monthly pension contributions would increase his pension payout in the future. Looking at the actual contract, the restrictive phrase in section 1(c) is "for the benefit of Mr. Daggett." The nearest antecedent is "contributions." This restrictive phrase defines the limits and purposes of the contributions. Moreover, because the BPU wrote the settlement agreement, it is construed strictly against the BPU and liberally toward Daggett. See *Dearborn Motors Credit Corp. v. Neel*, 184 Kan. 437, 449, 337 P.2d 992 (1959) (contract construed strictly against the writer and liberally toward the other party).

Additionally, section 3 of the settlement agreement states as follows:

"Until June 30, 2008, Mr. Daggett has the option to request, upon sixty (60) days written notice, the payment of the remaining value of his annual compensation as set forth in paragraph 1(a) in a single lump sum amount. In the event that Mr. Daggett exercises this option, the compensation and benefits provided in paragraphs 1(a), 1(b), 1(c), and 2 of this Agreement shall terminate upon the date the lump sum payment is made."

Daggett agreed to receive his salary compensation on a monthly basis in exchange for the BPU's continued contributions to Dag-

gett's pension fund. The BPU's failure to properly make those "contributions for the benefit of Mr. Daggett" took away the benefit that Daggett was supposed to receive. Therefore, Daggett is in no better position today, after spreading out his salary payments, than he would have been had he received a lump sum back in June 2008. Daggett essentially waited 2½ years to receive his full salary for nothing.

Based on the settlement agreement, the only way to terminate the BPU's duty to contribute to the pension fund for Daggett's benefit would be for Daggett to request a lump sum payment. Daggett did not request a lump sum payment; therefore, the BPU was still required to make pension contributions "for the benefit of Mr. Daggett."

The contract clearly states that the pension plan was "currently administered by the Board and Pension Trustees of the Board." This means that both the BPU and the pension trustees were aware of each other; therefore, even if the Board complied by making the contributions, it would appear that the pension trustees would have told the Board that the contributions were not being accepted. Moreover, the pension trustees could be considered an agent of the BPU because their main purpose was to establish a retirement plan for the employees of the BPU. "[A]n agent has a duty, not only to make no misstatements of fact, but also to disclose to the principal all material facts fully and completely." *Merchant v. Foreman*, 182 Kan. 550, 556, 322 P.2d 740 (1958). Once the BPU discovered that its contributions were not being accepted, it was then required, under section 20 of the settlement agreement, to find an acceptable alternative to fulfill its contractual obligations to Daggett. It failed to do so.

It is disingenuous for the BPU to argue that it did what it was required to do, and, therefore, it is not liable for breach of contract. It would not be a reasonable interpretation of the settlement agreement to find that the intent of the parties was simply for the BPU to make the contributions without any concern with whether those contributions were accepted. This interpretation completely ignores the words "for the benefit of Mr. Daggett." As the caselaw requires, a contract should not be interpreted merely by isolating

one particular sentence or provision. Reading this contract as a whole, it is clear that the contributions had a specific purpose, and that purpose was to benefit Daggett. Thus, it was reasonable for Daggett to expect that the monthly pension contributions would continue to go into the pension fund to increase his eventual payout so long as he did not exercise his option, under section 3 of the settlement agreement, to request the payment of the remaining value of his annual compensation in a single lump sum payment. And he did not exercise this option.

The fact that the BPU wrote the contract weighs in favor of the previously mentioned interpretation. Such an interpretation is supported by a common-law rule that a court should construe the terms of a writing against the drafter. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995). The purpose for the rule "is to protect the party who did not choose the language from an unintended or unfair result." 514 U.S. at 63. Giving the BPU the benefit of its own interpretation would subject Daggett to an unfair result. Daggett would lose his increased pension benefit, which under the contract he fully expected to receive.

As stated earlier, a breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 374, 552 P.2d 885 (1976). Therefore, because the BPU failed to ensure that the contributions made benefited Daggett, it breached the settlement agreement. Because there is insufficient evidence in the record to calculate damages, we remand to the trial court to determine damages.

Reversed and remanded to the trial court with directions to grant summary judgment in favor of Daggett for breach of contract and to calculate damages.

\* \* \*

BRUNS, J., concurring: I agree with my colleagues regarding the interpretation of the settlement and release agreement entered into by the parties in March 2006. I also agree that this case should

be remanded to the district court to determine the appropriate amount of damages. In reaching this decision, however, I would simply rely upon the plain and unambiguous language of the contract.

This case involves a negotiated settlement and release between experienced parties (a public utility company and its former general manager) who were represented by legal counsel. See *Kansas City Structural Steel Co. v. L.G. Barcus & Sons, Inc.*, 217 Kan. 88, 95, 535 P.2d 419 (1975) ("None of the parties here involved were neophytes or babes in the brambles of the business world."). Accordingly, I do not believe we have sufficient evidence in the record to conclude that the settlement and release agreement should be strictly construed against BPU, nor do I believe we need to reach this issue.

The common definition of the word "benefit" is "an advantage." American Heritage Dictionary 168 (4th ed. 2006). Because BPU's payments to the pension plan were not accepted and BPU kept the money that was returned by the pension plan, Daggett did not receive the advantage or benefit of the bargain. Thus, it is not necessary to apply rules of construction in this case. See *Carrothers Constr. Co. v. City of South Hutchinson*, 288 Kan. 743, 751, 207 P.3d 231 (2009) (If the contract's terms are clear, the parties' intent is to be determined from the contract language without applying rules of construction.).