FILED
United States Court of Appeals
Tenth Circuit

December 2, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WAHLCOMETROFLEX, INC.,

    Plaintiff-Counter-Defendant - Appellant,

v.

WESTAR ENERGY, INC.,

    Defendant-Counter-Claimant - Appellee.

No. 13-3268

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 5:11-CV-04017-EFM-JPO)**

---

William E. Corum (and David M. Buffo of Husch, Blackwell, L.L.P., with him on the briefs), Kansas City, Missouri, for Plaintiff-Counter-Defendant - Appellant.

Michael E. Callahan (and Angela G. Nichols of Stinson, Leonard, Street, L.L.P., with him on the brief), Kansas City, Missouri, for Defendant-Counter-Claimant - Appellee.

---

Before **KELLY**, **LUCERO**, and **HARTZ**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

This case involves a dispute over the meaning and application of a liquidated damages provision under Kansas law. The district court held that Defendant Westar Energy, Inc. (Westar) did not need to establish that Plaintiff Wahlcometroflex Inc.'s (Wahlco) late delivery of equipment actually delayed Westar's production schedule in order to recover contractual liquidated damages. Wahlcometroflex, Inc. v. Westar Energy, Inc., No. 11–4017–EFM, 2013 WL 5774846 (D. Kan. Oct. 25, 2013). We have jurisdiction over Wahlco's appeal under 28 U.S.C. § 1291, and we affirm.

Background

Westar is an electric company based in Topeka, Kansas that owns several sources of electricity, including the Jeffrey Energy Center (JEC). The JEC is a coal-fired power plant composed of three units: Unit 1, Unit 2, and Unit 3. In 2005, Westar began a project to upgrade the JEC's existing flue gas desulfurization (FGD) system.

Wahlco is a Delaware corporation that designs and manufactures a number of products including FGD dampers. On December 22, 2006, Westar and Wahlco entered into a contract under which Wahlco agreed to manufacture and deliver dampers (Equipment) to Westar for Units 1, 2, and 3. The total contract price was $6,229,185.50. The contract provided that the Equipment was to be delivered by the "Latest Allowable Date[s]": August 29, 2007 for Unit 1; July 29, 2008 for

- 2 -

Unit 2; and March 16, 2008 for Unit 3.

Article 2 of the contract addressed liquidated damages in the event Wahlco did not make timely delivery. In an introductory paragraph, the agreement provided:

> [Westar] and [Wahlco] recognize that schedule of delivery of documents and Equipment and Material is critical to this Contract and that [Westar] will suffer financial loss if such Work is not completed within the period of time specified. [Wahlco] shall pay [Westar] in accordance with the following paragraphs for each day of schedule delay.

App. 272. The following paragraphs explain specifically: "In the event [Wahlco] has not delivered each piece of Equipment and Material . . . by the latest allowable delivery date . . . [Wahlco] shall pay [Westar] one and one half percent (1.5%) of the total Contract Price per week for every week beyond the latest allowable delivery date." Id. The total liquidated damages for late delivery of Equipment were "not [to] exceed ten percent of the total Contract Price." Id.

Further, the agreement stated that "time is of the essence" and that Westar "will sustain damage if [Wahlco] fails to . . . complete Equipment and Material deliveries within the dates specified." Id. at 271. It further provided that the liquidated damages were "not penalties" and that "damages are difficult or impossible to determine, otherwise obtaining an adequate remedy is inconvenient and the liquidated damages constitute a reasonable approximation of the harm or loss to [Westar]." Id.

Wahlco completed delivery of the equipment for Unit 1 on November 15, 2007, two-and-a-half months after the "latest allowable date" for delivery. It delivered the equipment for Unit 2 on October 3, 2008, two months late. And, it delivered the equipment for Unit 3 on August 1, 2008, over four months late. Id. at 288. Because of these late deliveries, Westar withheld $367,511.28 of the contract price pursuant to the liquidated damages provision.

On February 11, 2011, Wahlco filed suit in Kansas federal district court to recover this amount. Westar answered and counterclaimed seeking a declaratory judgment that it was entitled to retain or recover liquidated damages totaling $622,918.55 (Count I) and bringing a breach of contract claim for the same amount (Count II).

The district court ordered discovery to be conducted in two phases. Phase 1 permitted limited discovery on the legal issue of Count I of Westar's counterclaim and directed that, following discovery, both parties were to submit cross-motions for summary judgment as to that claim. No discovery was conducted on the issue whether Wahlco's late delivery actually delayed Westar's project.

The parties filed cross-motions for summary judgment on Count I of Westar's counterclaim addressing whether Westar was required to prove actual delay to its project schedule to recover liquidated damages. The district court granted Westar's motion for partial summary judgment, holding that Westar did

not need to establish delay to recover liquidated damages. Wahlcometroflex Inc.

v. Westar Energy, Inc., No. 11–4017–EFM/JPO, 2012 WL 2366693 (D. Kan. June

21, 2012). The court explained that the contract unambiguously required Wahlco

to pay liquidated damages in the event of late delivery regardless of delay to the

project. Id. at *3. It further explained that, under Carrothers Construction Co. v.

City of South Hutchinson, 207 P.3d 231 (Kan. 2009), the liquidated damages

clause was valid—not an unenforceable penalty—because it was reasonable in

light of the anticipated damages at the time the contract was signed. Id. at *4.

Under Kansas law, the court explained, courts do not inquire as to actual damages

with the "benefit of hindsight." Id. Thereafter, the district court granted

Westar's motion for summary judgment, rejected Wahlco's invitation to

reconsider its previous ruling and entered final judgment in favor of Westar.

Wahlco then appealed.


## Discussion

We review the district court's grant of summary judgment de novo.

Mumby v. Pure Energy Servs. (USA), Inc., 636 F.3d 1266, 1269 (10th Cir. 2011).

Summary judgment is appropriate where a movant establishes "there is no

genuine dispute as to any material fact" and that "the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence, and

make all reasonable inferences therefrom, in the light most favorable to the non-

moving party.  Lifewise Master Funding v. Telebank, 374 F.3d 917, 927 (10th Cir. 2004).

Wahlco argues that summary judgment was inappropriate for three reasons. First, it contends that its contract with Westar required a showing of project delay to trigger the liquidated damages provision.  Aplt. Br. 9.  Second, it contends that under Kansas law, Westar must establish that Wahlco's breach of contract *caused* the event for which liquidated damages were designed to compensate—i.e., delay to Westar's project schedule.  Id. at 12–17.  Finally, Wahlco argues the liquidated damages provision should be construed to require a showing of delay; otherwise, it amounts to an unenforceable penalty.  Id. at 17–23.  We address each argument in turn.

A.    Does the Contract Require Project Delay for Liquidated Damages?

Wahlco argues its contract with Westar explicitly states that liquidated damages are to be paid for "schedule delay" and argues that the district court, by reading this language out of the contract, "ignored the parties' clear and sole intent in providing for liquidated damages."  Aplt. Br. 9.  Wahlco argues the intent of the parties is evident based on the testimony from Darreld Ellis, Westar's corporate representative.  Ellis was asked if the liquidated damages provisions were "calculated to anticipate some type of damage based on the delay that would be caused to the project by their equipment not being delivered on time."  He responded: "At the time of the contracting that was the assumption by

both parties." App. 279.

Under Kansas law,[1] the construction of a written contract is a question of law for the court. Carrothers, 207 P.3d at 239. The primary duty of the court is to ascertain the intent of the parties; if this intent is clear from the contractual language, that language is binding on the court. Id. "The fundamental rule of construction is that courts will not rewrite a contract by construction if it is clear and unambiguous." In re Marriage of Gurganus, 124 P.3d 92, 95 (Kan. Ct. App. 2005).

Despite Wahlco's best attempts to create ambiguity in its agreement with Westar, there is none. The contract clearly states: "In the event [Wahlco] has not delivered each piece of Equipment and Material . . . by the latest allowable delivery date . . . [Wahlco] shall pay [Westar] one and one half percent (1.5%) of the total Contract Price per week for every week beyond the latest allowable delivery date." App. 272. Nothing about this provision suggests that actual delay to Westar's project is required to trigger liquidated damages. In fact, Wahlco agreed that Westar "will sustain damage if [Wahlco] fails to . . . complete Equipment and Material deliveries within the dates specified." Id. at 271.

Wahlco relies on the general language stating "[Wahlco] shall pay [Westar] in accordance with the following paragraphs for each day of schedule delay," id.

---

[1] The parties agree Kansas law applies to the case and that the Kansas U.C.C. applies to the transaction. Aplt Br. 17; Aplee. Br. 16.

at 272, suggesting that this language creates an ambiguity as to whether delay to Westar's project must be shown. It does not. The word "schedule" is a reference to the "schedule of [Wahlco's] delivery of documents and Equipment and Material" referenced earlier in the same paragraph—not the "schedule" of Westar's project. Id. Further, even if it was a reference to Westar's project schedule, the provision is merely a general introductory clause that directs the parties to determine any liquidated damages "in accordance with" the subsequent, more specific paragraphs. Id. The specific paragraphs that follow address the liquidated damages for late delivery of documents, liquidated damages for late delivery of equipment, and the cap on total liquidated damages. Id. Under Wahlco's reading, Westar would also have to show that the late delivery of documents caused delay to Westar's project schedule in order to collect liquidated damages. This interpretation is implausible.

Because the contractual language is clear, the statements of Westar representative Darreld Ellis are irrelevant. See Carrothers, 207 P.3d at 239 ("Interpreting a written contract that is free from ambiguity is a judicial function and does not require oral testimony to determine the contract's meaning."). Even if Ellis's statements were relevant, they do not show ambiguity in the contract. Ellis's beliefs as to what costs the liquidated damages were designed to compensate are wholly compatible with the contract's language indicating that liquidated damages are triggered by late delivery, especially in light of the

parties' agreement that "damages are difficult or impossible to determine."  App. 271.

Thus, we reject Wahlco's argument that the contract requires Westar to establish actual delay in order to recover liquidated damages.

B.    Does Kansas Law Require a Showing of Causation?

Wahlco next argues that under Kansas law, a plaintiff must establish causation as an element of any breach of contract claim, including claims to recover liquidated damages.  Aplt. Br. 13 (citing Navair, Inc. v. IFR Am., Inc., 519 F.3d 1131, 1137 (10th Cir. 2008)).  Wahlco concedes that in Kansas, "a party may recover liquidated damages without proving actual damages."  Aplt. Reply Br. 7.  However, it contends there still must be a "causal connection" between the breach of contract and the "anticipated impact event for which the liquidated damages were designed to compensate"—i.e., delay to Westar's project.  Id. Wahlco argues the district court found that breach alone was sufficient to trigger the liquidated damages clause and thus improperly eliminated the element of causation required by Kansas law.  We disagree.

Wahlco's argument is nuanced, but once again amounts to nothing more than a request to rewrite its contract with Westar.  Wahlco agreed in the contract that Westar "will sustain damage if [Wahlco] fails to . . . complete Equipment and Material deliveries within the dates specified," App. 271, and that Westar "will suffer financial loss if such Work is not completed" within the period.  Id. at 272.

- 9 -

As Kansas courts have recognized, language in a liquidated damage provision is "ordinarily accepted as controlling." Carrothers, 207 P.3d at 241 (quoting Beck v. Megli, 114 P.2d 305, 308 (Kan. 1941)). The contract language amounts to a concession that Wahlco's breach (failure to deliver equipment on time) would cause damages (delay to the Project) and relieves Westar of the burden of proving this in court. We decline the invitation to "relieve" Wahlco "from the consequences imposed by the plain and unambiguous language in its contract." Id. at 244.

Moreover, adopting Wahlco's argument would significantly undercut the effectiveness of liquidated damages provisions. Liquidated damages provisions allow parties "to protect themselves against the difficulty, uncertainty, and expense" involved with determining damages in court. IPC Retail Props., LLC v. Oriental Gardens, Inc., 86 P.3d 543, 550 (Kan. Ct. App. 2004), overruled on other grounds by Carrothers, 207 P.3d 231. Requiring courts to look beyond the language of a contract to discern whether the "anticipated impact event for which the liquidated damages were designed to compensate" had transpired would defeat the purpose of using such provisions.

Thus, we find that Westar did not need to establish that Wahlco's breach actually caused the event for which liquidated damages were provided.

C.     Was the Liquidated Damages Provision a Penalty?

Finally, Wahlco argues Westar should be required to prove schedule delay

to collect liquidated damages because otherwise, the liquidated damages clause amounts to an unenforceable penalty. Aplt. Br. 17–23. Because we conclude that the liquidated damages provision is not an unenforceable penalty, we reject this argument.

The burden of proving that a liquidated damages clause is in fact a penalty falls on the party challenging the provision. Carrothers, 207 P.3d at 241. This "promote[s] a public policy favoring settlement and avoidance of litigation, and allow[s] parties to make, and live by, their own contracts." Id. Liquidated damages clauses in contracts involving the sale of goods are governed by the Kansas U.C.C., see Kvassay v. Murray, 808 P.2d 896, 900 (Kan. Ct. App. 1991), which provides:

> Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the *anticipated or actual harm* caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

Kan. Stat. Ann. § 84-2-718(1) (emphasis added). Thus, three factors are relevant to whether a liquidated damages provision is an "unenforceable penalty": (1) whether the amount is reasonable in light of anticipated *or* actual harm; (2) the difficulty of proving actual damages; and (3) the difficulty of obtaining an otherwise adequate remedy. Kvassay, 808 P.2d at 900.

Here, Wahlco expressly agreed that: (1) the liquidated damages provided

- 11 -

for were "not penalties" but "a reasonable approximation of the harm or loss" Westar would suffer in the event of late delivery; (2) actual damages would be "difficult or impossible to determine"; and (3) "otherwise obtaining an adequate remedy is inconvenient" to Westar. App. at 271. Such language is "ordinarily accepted as controlling unless the facts and circumstances impel a contrary holding." Carrothers, 207 P.3d at 241; see also Hutton Contracting Co. v. City of Coffeyville, 487 F.3d 772, 781 (10th Cir. 2007). No facts or circumstances do. Testimony was presented to the district court that "[a]t the time of entering into the Contract, Westar anticipated that late delivery of the equipment by Wahlco would result in damages, including from potentially extended outages, which could result in damages of multiple hundreds of thousands of dollars per day." App. at 288.

Wahlco presented no evidence that the liquidated damages were unreasonable in light of the harm anticipated at the time the contract was made. Instead, Wahlco simply contends that the liquidated damages were unreasonable in light of *actual* damages, or as it alleges, the lack thereof. Aplt. Br. 32–33. But the text of § 84-2-718(1) only requires that the liquidated damages be reasonable in light of "anticipated *or* actual damages." While some courts in other jurisdictions have interpreted this language to require liquidated damages to be reasonable in light of both anticipated *and* actual damages, see 2 Roy Ryden Anderson, Damages Under the Uniform Commercial Code § 13:9, at n.10 (2014),

- 12 -

Kansas does not.  See Kvassay, 808 P.2d at 901 (analyzing whether liquidated damages were reasonable in light of actual damages after concluding they were likely unreasonable in light of anticipated damages); see also Anderson, supra, at n.13.  Because the liquidated damages provision does not amount to an unenforceable penalty, we reject Wahlco's invitation to construe the provision to require a showing of project delay.

AFFIRMED.

13-3268 – *Wahlcometroflex, Inc. v. Westar Energy, Inc.*

**HARTZ,** Circuit Judge, concurring:

I join Judge Kelly's opinion. I cannot reconcile Wahlco's causation argument with the decision of the Kansas Supreme Court in *Carrothers Construction Co. v. City of South Hutchinson*, 207 P.3d 231 (Kan. 2009), which held that a liquidated-damages provision in a contract is enforceable in accordance with its terms so long as those terms were reasonable at the time of execution of the contract, without the benefit of hindsight, *see id.* at 240–43.