**AFFIRM; and Opinion Filed March 5, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01369-CV

## GATOR APPLE, LLC, Appellant
## V.
## APPLE TEXAS RESTAURANTS, INC., Appellee

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-6565**

# OPINION

Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Fillmore

Gator Apple, LLC (Gator Apple) appeals from the trial court's grant of summary judgment in favor of Apple Texas Restaurants, Inc. (Apple Texas) asserting, in four issues, that the trial court erred by concluding that Apple Texas is a third-party beneficiary of the entire franchise agreement between Gator Apple and Applebee's International, Inc. (Applebee's); applying Kansas law to determine whether the liquidated damages provision in the franchise agreement is an unenforceable penalty and to the breach of contract claim asserted by Apple Texas against Gator Apple; granting summary judgment for Apple Texas; and denying Gator Apple's motion for new trial. We affirm the trial court's judgment.

## Background

On August 3, 1998, Applebee's and Florida Apple West, LLC, Gator Apple's predecessor,[1] along with its principal shareholders, signed an Applebee's Neighborhood Grill & Bar Franchise Agreement (the franchise agreement). The franchise agreement allowed Gator Apple to operate an Applebee's Neighborhood Grill & Bar restaurant in North Ft. Myers, Florida. The franchise agreement identifies Applebee's as a Delaware corporation with an address in Overland Park, Kansas and Gator Apple as a Florida limited liability company with an address in Palm Beach, Florida.

As relevant to this appeal, the franchise agreement provided:

20.     NO WAIVER OF DEFAULT

20.1  The waiver by any party to this Agreement of any breach or default, or series of breaches or defaults, of any term, covenant or condition herein, or of any same or similar term, covenant or condition contained in any other agreement between Franchisor and any franchisee, shall not be deemed a waiver of any subsequent or continuing breach or default of the same or any other term, covenant or condition contained in this Agreement, or in any other agreement between Franchisor and any franchisee.

21.     CONSTRUCTION, SEVERABILITY,
        GOVERNING LAW AND JURISDICTION

21.2     **FRANCHISEE AND PRINCIPAL SHAREHOLDERS ACKNOWLEDGE THAT FRANCHISOR MAY GRANT NUMEROUS FRANCHISES THROUGHOUT THE UNITED STATES ON TERMS AND CONDITIONS SIMILAR TO THOSE SET FORTH IN THIS AGREEMENT, AND THAT IT IS OF MUTUAL BENEFIT TO FRANCHISEE AND PRINCIPAL SHAREHOLDERS AND TO FRANCHISOR THAT THESE TERMS AND CONDITIONS BE UNIFORMLY INTERPRETED. THEREFORE, THE PARTIES AGREE THAT TO THE EXTENT THAT THE LAW OF THE STATE OF KANSAS DOES NOT CONFLICT WITH LOCAL FRANCHISE STATUTES, RULES AND REGULATIONS, KANSAS LAW SHALL APPLY TO THE CONSTRUCTION OF THIS AGREEMENT AND SHALL GOVERN ALL QUESTIONS WHICH ARISE WITH REFERENCE HERETO;**

---

[1] For convenience, Gator Apple, as used in this opinion, includes Florida Apple West, LLC.

**PROVIDED, HOWEVER, THAT PROVISIONS OF KANSAS LAW REGARDING CONFLICTS OF LAW SHALL NOT APPLY HERETO.**

22.     INTERFERENCE WITH EMPLOYMENT RELATIONS

During the term of this Agreement, neither Franchisor nor Franchisee shall employ or seek to employ in a managerial position (i.e., in a position at a pay grade at or above that of Assistant Restaurant Manager or Kitchen Manager), directly or indirectly, any person who is at the time or was at any time during the prior six (6) months employed by the other party or any of its subsidiaries or affiliates, or by any franchisee in the System.[2]  This section shall not be violated if, at the time Franchisor or Franchisee employs or seeks to employ such person, such former employer has given its written consent.  Notwithstanding any other provision of this Agreement, the parties hereto acknowledge that if this Section is violated, such former employer shall be entitled to liquidated damages equal to three (3) times the annual salary of the employee involved, plus reimbursement of all costs and attorneys' fees incurred.  In addition to the rights granted to the parties hereto, the parties acknowledge and agree that any franchisee from which an employee was hired by either party to this Agreement in violation of the terms of this Section shall be deemed to be a third-party beneficiary of this provision and may sue and recover against the offending party the liquidated damages herein set forth; provided however, the failure by Franchisee to enforce this Section shall not be deemed to be a violation of this Section.

In 2008, Apple Texas purchased a number of restaurants in North Texas from Applebee's and became a franchisee of Applebee's.  At the time of the purchase, Richard Steven DiMeo was Applebee's Director of Operations for Texas.  After the purchase, DiMeo became the Vice-President of Operations for Apple Texas.  In October 2009, Apple Texas terminated DiMeo's employment.  DiMeo's annual salary at the time his employment was terminated was $163,000.  Apple Texas promoted an existing employee to be the new Vice-President of Operations.  Apple Texas did not have to pay a recruiting fee to fill the position and did not incur costs to relocate or train the employee.  Further, the new Vice-President of Operations' salary was $25,000 less per year than DiMeo's salary.

---

[2] The franchise agreement defines the "System" as:

a unique system of restaurants which specialize in the sale of high quality, moderately priced food and alcoholic beverages in an attractive, casual setting, which includes proprietary rights in certain valuable trade names, service marks and trademarks, including the service mark Applebee's Neighborhood Grill & Bar and variations of such mark, designs, décor and color schemes for restaurant premises, signs, equipment, procedures and formulae for preparing food and beverage products, specifications for certain food and beverage products, inventory methods, operating methods, financial control concepts, training facilities and teaching techniques.

DiMeo contacted Applebee's about possible employment opportunities. Sam Rothschild, Applebee's Senior Vice-President of Operations at the time, requested that Apple Texas provide a letter of release that would allow Applebee's to discuss employment opportunities with DiMeo. Sunil Dharod, the owner and chief executive officer of Apple Texas, gave "written consent under section 22" for "Applebee's Services International to discuss possible employment opportunities with" DiMeo.

Applebee's did not have an opening that it felt was appropriate for DiMeo. Applebee's employees did, however, tell DiMeo about a potential employment opportunity at Gator Apple which, by that time, was operating a number of restaurants in Florida and Georgia as a franchisee of Applebee's. Jeff Hull, Applebee's Vice-President of Franchise Operations, told DiMeo that he thought the existing release was sufficient to allow DiMeo to discuss the opportunity with Gator Apple. However, Hull also told DiMeo that "Sam" interpreted the release as being "ASI specific." Hull also encouraged Greg Georgas, a principal shareholder in Gator Apple, to contact Dharod directly because the release was specific to Applebee's. On November 30, 2009, DiMeo began working for Gator Apple as its Executive Vice-President and Chief Operating Officer. According to DiMeo, employees often moved within different Applebee's franchises with and without letters of releases.

Steve Pitts was an Area Director for Apple Texas. At some point before DiMeo was terminated, Pitts began looking for another job because he disagreed with decisions being made by Apple Texas. Pitts continued to talk to DiMeo after DiMeo left Apple Texas. At some point, Pitts obtained a release from Apple Texas. However, this release is not in the record, and the only evidence about the scope of the release indicates that Pitts was interested in "a position with Applebee's corporate." On April 8, 2010, Pitts resigned from Apple Texas. His annual salary at the time of his resignation was $86,314. Pitts began working for Gator Apple in May 2010 as a

Director of Operations. An existing employee of Apple Texas was promoted to Pitts's Area Director position. Apple Texas incurred no recruiting expenses to fill the position and no training expenses for the employee, but incurred costs to relocate the employee. The new Area Director was paid approximately $16,000 less per year than what Pitts had been paid.

Daniel Justice was employed as a General Manager for Apple Texas. Justice disagreed with decisions being made at Apple Texas and, by the time DiMeo was terminated, had decided that he was going to leave Apple Texas. Further, for personal reasons, Justice had decided he no longer wanted to live in Texas. At the time Justice resigned from Apple Texas on January 20, 2010, his annual salary was $53,986. Justice began working for Gator Apple as a General Manager on February 4, 2010.

Cherie Adams was a Training Kitchen Manager for Apple Texas. For personal reasons, Adams decided to move to Georgia. Adams resigned from Apple Texas effective April 22, 2010. At the time, her annual salary was $37,500. Adams began working for Gator Apple as a General Manager on April 26, 2010.

Dave Haakinson was employed by Apple Texas as an Area Director. Haakinson decided to leave Apple Texas because he was unhappy with the ownership. After contemplating it for "many months," Haakinson resigned from Apple Texas on April 15, 2010. His annual salary at the time of his resignation was $78,924. Haakinson began working for Gator Apple on April 19, 2010 as a Director of Operations. After obtaining a letter of release from Applebee's, Apple Texas hired an employee of Applebee's to replace Haankison. Apple Texas incurred costs to relocate the new Area Director. Further, Apple Texas paid the new employee approximately $21,000 more per year than Haakinson was being paid.

In response to Apple Texas's requests for admissions, Gator Apple admitted it hired DiMeo, Pitts, Justice, Adams, and Haakinson within six months of the termination of their

employment with Apple Texas and did not obtain a letter of release from Apple Texas for any of these individuals. According to Rothschild, section 22 of the franchise agreement was intended to protect Applebee's franchisees from "poaching" by another franchisee. Section 22 applies regardless of whether an employee resigns or is terminated in order to prevent the employee from purposefully getting fired. Costs associated with the loss of a managerial employee include recruiter fees, relocation expenses, loss of productivity for ten weeks while the replacement employment is trained, minimal productivity from the employee during a two or three month "ramp-up" period, loss in sales, loss in productivity, loss of good will between existing restaurant management and staff, and loss of profits. Some of these costs cannot be calculated with mathematical certainty. In Rothschild's opinion, the sum of three times the employee's annual salary was agreed upon as a reasonable estimate of damages a franchisee would suffer as a result of another franchisee's violation of section 22. According to Dharod, when an employee leaves and an existing employee is promoted to the position, there are customer service issues as well as training costs associated with filling the job of the promoted employee "all the way down to the first position." Rothschild described this as a "continued ripple down effect when you have changes to leaders and/or supervisors." According to Dharod, it is very difficult "to put a number on this" and three times the departing employee's annual salary is on the lower end of the actual costs.

While at Applebee's, Rothschild had franchisees contact him about hiring one of his employees. Depending on the circumstances, Applebee's would give a letter of release to allow the employee to discuss employment opportunities with the franchisee. Rothschild never requested three times an employee's annual salary as compensation from the franchisee because he never had one of his employees hired by a franchisee that did not seek prior permission.

There have been instances in which the franchisee was not required to pay any compensation for hiring an Applebee's employee.

In approximately 2005, Rothschild established a fee schedule applicable when a franchisee hired an Applebee employee who had received a letter of release from Applebee's. According to Renee Weston, Director of Franchise Human Resources for Applebee's, the fee schedule was not applicable when an employee was hired without permission. Rothschild indicated the fee schedule was not intended to replace section 22 of the franchise agreement, but instead was intended to compensate Applebee's only for the costs relating to finding, relocating, and training a replacement. The fee ultimately established was fifty percent of the employee's annual salary. The fee schedule was not binding on a franchisee that hired an employee from another franchisee. According to Weston, in some situations, such as when the employee wished to relocate for personal reasons or had been terminated, Applebee's waived the fee.

Georgas denied there were any discussions or negotiation about section 22 between Applebee's and Gator in 1998 when the franchise agreement was signed. He was not provided any information from Applebee's about whether it had made any attempt to estimate actual damages from a breach of section 22 or what costs might be incurred if a franchisee breached section 22. Rather, section 22 was one of many "boilerplate" paragraphs presented in what Applebee's described as the "standard contract." In Georgas's opinion, it would not have been reasonable in 1998 to estimate actual damages for a breach of section 22 at three times an employee's annual salary and, in his experience, there are often minimal or no costs related to finding, relocating, and training a replacement employee. Further, a franchisee would incur these same costs to replace an employee who went to work for a company outside the Applebee's franchise system.

Apple Texas sued Gator Apple for breach of contract alleging Gator Apple violated section 22 of the franchise agreement by hiring DiMeo, Pitts, Justice, Adams, and Haakinson within six months of their working for Apple Texas without obtaining letters of release from Apple Texas.[3] Apple Texas filed a motion for summary judgment, asserting the franchise agreement is a valid enforceable contract, Apple Texas is a third-party beneficiary of the franchise agreement, Gator Apple breached the franchise agreement, and Apple Texas was entitled to liquidated damages in the amount of $1,259,172, which was three times the combined annual salaries of DiMeo, Pitts, Justice, Adams, and Haakinson. Apple Texas also argued that Kansas law applied to its breach of contract claim.

Gator Apple responded to Apple Texas's motion for summary judgment, asserting that, under choice of law principles, Texas law applied in the case. Gator Apple contended that Apple Texas's claim ignored Applebee's long-standing practices concerning inter-franchise hires as well as franchisor-franchisee hires. Gator Apple asserted that Applebee's customarily requested payments of no more than fifty percent of actual compensation when an employee was hired by a franchisee and often waived this fee in situations involving a terminated employee or an employee who had already decided to leave the company. Gator Apple argued the liquidated damages clause in the franchise agreement was a penalty provision designed to serve as a deterrent and was not reasonably related to the actual costs a franchisee incurred to replace an employee.

Gator Apple also asserted it did not breach the franchise agreement. It argued that Apple Texas gave DiMeo and Pitts letters of release and unreasonably and arbitrarily refused to give letters of release to the other employees hired by Gator Apple. Further, Pitts, Justice, Adams,

---

[3] Apple Texas also sued DiMeo for breach of his employment contract with Apple Texas based on his alleged recruitment of Pitts, Justice, Adams, and Haakinson. After the trial court granted summary judgment in favor of Apple Texas on its claim against Gator Apple, Apple Texas dismissed its claim against DiMeo.

and Haakinson all planned to leave Apple Texas regardless of whether they were hired by Gator Apple. Gator Apple finally asserted that Apple Texas suffered no actual damages in connection with the departure of the employees.

The trial court partially granted Apple Texas's motion for summary judgment, concluding that Kansas law governed whether (1) the liquidated damages provision of the franchise agreement is enforceable; (2) the franchise agreement is a valid and enforceable contract; and (3) Apple Texas is a third-party beneficiary of the franchise agreement. The trial court allowed additional discovery before ruling on the remaining issues in the case. After Gator Apple submitted additional briefing and evidence, the trial court entered a final judgment awarding Apple Texas $1,259,172, attorney's fees of $110,000, pre- and post-judgment interest, and contingent attorney's fees on appeal.

Gator Apple filed a motion for new trial arguing it was entitled to a new trial in the interest of justice; based on the arguments raised in its response to Apple Texas's motion for summary judgment; and because section 22 of the franchise agreement makes Apple Texas a third-party beneficiary of only that provision and not of the franchise agreement as a whole, section 22 does not make Apple Texas a third-party beneficiary of the choice-of-law clause or any other provision of the franchise agreement, and even if Apple Texas is a third-party beneficiary of the choice-of-law clause, the choice-of-law clause does not provide for application of Kansas law to anything other than the construction of the franchise agreement. The motion for new trial was overruled by operation of law.

### Summary Judgment

In its first two issues, Gator Apple argues the trial court erred by concluding that Apple Texas is a third-party beneficiary of the entire franchise agreement and by applying Kansas law to determine whether the liquidated damages provision in the franchise agreement is an

–9–

unenforceable penalty and to Apple Texas's breach of contract claim. In its third issue, Gator Apple contends the trial court erred by granting summary judgment in favor of Apple Texas and by determining that Gator Apple is indebted to Apple Texas because Apple Texas did not establish its right to summary judgment as a matter of law and fact issues exist regarding whether (1) Apple Texas provided releases to DiMeo and Pitts, (2) Apple Texas waived its breach of contract claim by conduct, (3) hiring the former Apple Texas employees was permissible in light of Applebee's policies of limiting or waiving fees under section 22, and (4) whether Gator Apple caused Apple Texas's damages.

*Standard of Review*

We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).[4] The standards of review for a traditional summary judgment under rule 166a(c) are well known. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. In reviewing a traditional summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Id.*

*Choice-of-Law Provision in Franchise Agreement*

In its first issue, Gator Apple asserts the trial court erred by construing the choice-of-law provision in the franchise agreement to apply to issues other than those relating to the

---

[4] The standard of review is a procedural question to which we apply Texas law. *See HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 577 (Tex. App.—Austin 2012, no pet.).

construction of the agreement. The franchise agreement provides that "Kansas law shall apply to the construction of this agreement and shall govern all questions which arise with reference hereto." Gator Apple argues this provision is narrowly written to require the application of Kansas law to the construction of the franchise agreement and to questions relating to the construction of the franchise agreement, but not to questions relating to the validity of the franchise agreement, performance or lack of performance under the franchise agreement, or the liquidated damages provision.

Contract interpretation is a matter of law over which an appellate court exercises unlimited review. *Unrau v. Kidron Bethel Ret. Servs., Inc.*, 27 P.3d 1, 16 (Kan. 2001). The primary rule for interpreting written contracts is to ascertain the parties' intent. *Stechschulte v. Jennings*, 298 P.3d 1083, 1093 (Kan. 2013). If the terms of the contract are clear, the intent of the parties is to be determined from the contract language without applying rules of construction. *Id.*

In the franchise agreement, Applebee's and Gator Apple acknowledged that Applebee's could enter into agreements with other franchisees in different states containing terms and conditions similar to those contained in the franchise agreement. The stated purpose of the choice-of-law provision was to provide certainty to franchisees in different states that the terms and conditions in all agreements with Applebee's would be "uniformly interpreted." Gator Apple expressly acknowledged that it received a benefit from having the different franchise agreements uniformly interpreted and agreed that, to achieve this uniform interpretation, Kansas law would apply to the construction of the franchise agreement and "all question which arise with reference hereto."

Applebee's and Gator Apple expressed a clear intent for the franchise agreement to be uniformly interpreted with similar agreements entered into by Applebee's and other franchisees.

–11–

Allowing questions relating to whether the franchise agreement, or similar agreements entered into by Applebee's with other franchisees, had been breached and the remedy for any breach to be decided based on the various laws of different states would defeat the parties' intent that all agreements between Applebee's and its franchisees be uniformly interpreted. We conclude that questions of whether the franchise agreement was breached and the remedy applicable to such breach are "questions which arise with reference hereto" that the parties expressly agreed would be uniformly interpreted under Kansas law.

Because the franchise agreement clearly expresses the intent of Applebee's and Gator Apple to have Kansas law apply to the issues of whether section 22 of the franchise agreement was breached and the remedy for that breach, the trial court did not err by determining Kansas law applies to Apple Texas's breach of contract claim and to the enforceability of the liquidated damages provision.

*Choice-of-Law Analysis*

Gator Apple next argues that, even if the parties intended for Kansas law to apply to performance of the franchise agreement or to the liquidated damages provision, a choice-of-law analysis requires that Texas law be applied to Apple Texas's breach of contract claim. Gator Apple specifically asserts the law of Kansas pertaining to liquidated damages conflicts with a fundamental policy of Texas by failing to consider whether the party seeking liquidated damages suffered any actual damages from the breach of contract and by impermissibly restraining a Texas citizen's ability to change employment. Applebee's and Gator Apple specifically agreed in the franchise agreement that provisions of Kansas law regarding conflicts of law do not apply to the franchise agreement. Accordingly, we apply Texas law in conducting this analysis. *See Cook v. Frazier*, 765 S.W.2d 546, 549 (Tex. App.—Fort Worth 1989, no writ) ("As the forum

–12–

state, the Texas choice of law rules determine which state's law will be applied to resolve the substantive issues raised.").

Generally, parties may resolve uncertainty as to which jurisdiction's laws will govern their performance under a multi-jurisdictional contract by including a choice-of-law provision in the agreement. *DeSantis v. Wackenhut, Corp.*, 793 S.W.2d 670, 677 (Tex. 1990) (op. on reh'g); *Nexen, Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 419 (Tex. App.—Houston [1st Dist.] 2006, no pet.). However, "the parties' freedom to choose what jurisdiction's law will apply to their agreement cannot be unlimited." *DeSantis*, 793 S.W.2d at 677. Specifically, parties "cannot require that their contract be governed by the law of a jurisdiction which has no relation whatever to them or their agreement," and "they cannot by agreement thwart or offend the public policy of the state the law of which ought otherwise to apply." *Id.* However, "application of the law of another state is not contrary to the fundamental policy of the forum merely because it leads to a different result than would obtain under the forum's law." *Id.* at 680. "Moreover, the fact that the law of another state is materially different from the law of this state does not itself establish that application of the other state's law would offend the fundamental policy of Texas." *Id.*

We look to the Restatement to evaluate choice-of-law rules governing contracts that contain an express choice-of-law provision. *Sonat Exploration Co. v. Cudd Pressure Control Inc.*, 271 S.W.3d 228, 231 (Tex. 2008); *DeSantis,* 793 S.W.2d at 677–78. Section 186 of the Restatement provides that "[i]ssues in contract are determined by the law chosen by the parties in accordance with the rule of § 187 and otherwise by the law selected in accordance with the rule of § 188." RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 186 (1971); *see also Sonat Exploration Co.*, 271 S.W.3d at 231. Pursuant to section 187(1) of the Restatement, the law of the state chosen by the parties in the contract will be applied unless the specific issue was "one

–13–

which the parties could have resolved by explicit provision in their agreement directed to that issue." RESTATEMENT § 187(1). Examples of issues that cannot be resolved by contractual choice-of-law provisions include capacity, enforceability, formalities, and validity. *See id.* § 187 cmt. d; *DeSantis*, 793 S.W.2d at 678. Issues that can be resolved by agreement include construction, conditions precedent and subsequent, and performance. *See* RESTATEMENT § 187 cmt. c.

Gator Apple argues that the liquidated damages provision in this case is not enforceable under Texas law. Whether a contract is enforceable is not an issue that Applebee's and Gator Apple could have resolved by explicit agreement. *See DeSantis*, 793 S.W.2d at 678 (issue of enforceability of noncompete provision in contract not one parties could resolve by explicit agreement); *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 170 n.11 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (en banc) (noting parties could not have resolved issue of validity of indemnity by express agreement because Louisiana law (if applicable) would make agreements void); *Chase Manhattan Bank, N.A. v. Greenbriar N. Section II*, 835 S.W.2d 720, 724 (Tex. App.—Houston [1st Dist.] 1992, no writ). Accordingly, section 187(1) of the Restatement does not require the application of Kansas law.

Section 187(2) of the Restatement provides that the law of the chosen state will be applied unless either:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT § 187(2). Turning first to the exception in section 187(2)(a), Applebee's was headquartered in Kansas at the time the franchise agreement was entered into in 1998.

Applebee's had obligations under the franchise agreement that were to be performed in Kansas. Further, there is no evidence Applebee's was not still headquartered in Kansas in late 2008 and early 2009 when Gator Apple allegedly breached section 22 of the franchise agreement.[5] We conclude Kansas had a substantial relationship to the parties and the transaction for purposes of section 187(2)(a) of the Restatement. *See In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002) (orig. proceeding) (per curiam) (Colorado had substantial relationship to parties and their transaction because one party's office was in Colorado and personnel for Colorado office provided assistance to other party); *Progressive Child Care Sys., Inc. v. Kid "R" Kids Int'l*, No. 02-07-00127-CV, 2008 WL 4831339, at *2 (Tex. App.—Fort Worth Nov. 6, 2008, pet. denied) (mem. op.) (franchise agreement bore reasonable relationship with state of Georgia because parties contractually agreed to apply Georgia law and franchisor was a Georgia corporation).

Whether the exception in section 187(2)(b) applies depends on three determinations: (1) whether a state has a more significant relationship with the parties and their transaction than the chosen state; (2) whether that state has a materially greater interest than the chosen state in deciding whether the liquidated damages provision is enforceable; and (3) whether that state's fundamental policy would be contravened by the application of the law of the chosen state. *DeSantis*, 793 S.W.2d at 678; *see also Mary Kay Inc. v. Woolf*, 146 S.W.3d 813, 816 n.5 (Tex. App.—Dallas 2004, pet. denied). We must enforce the parties' choice-of-law unless all three elements of this test are satisfied. *Mary Kay Inc.*, 146 S.W.3d at 816; *CMA-CMG (Am.) Inc. v. Empire Truck Lines, Inc.*, No. 01-10-00077-CV, 2011 WL 1631961, at *2 (Tex. App.—Houston [1st Dist.] Apr. 28, 2011, no pet.) (mem. op.). However, in this case, we need consider only one of the elements in order to conclude that this second exception does not apply.

---

[5] There was evidence that by July 29, 2012, Applebee's had moved its headquarters to Missouri.

–15–

Whether there is a state with a more significant relationship to the transaction than the one contractually specified by the parties is determined based on the factors in section 188 of the Restatement. *DeSantis*, 793 S.W.2d at 677–78. These factors include:

> (1) the place of contracting,
>
> (2) the place of negotiation of the contract,
>
> (3) the place of performance,
>
> (4) the location of the subject matter of the contract, and
>
> (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT § 188(2). These factors, in turn, are to be taken into account "in light of the basic conflict of laws principles of section 6 of the RESTATEMENT." *DeSantis*, 793 S.W.2d at 678 & n.2.[6]

In this case, there is no evidence of where the franchise agreement was signed or negotiated. At the time the franchise agreement was signed, it was to be performed by Applebee's and Gator Apple in Kansas and Florida. Further, at the time the franchise agreement was signed, Applebee's, a Delaware corporation, had its headquarters in Overland Park, Kansas

---

[6] Section 6 of the Restatement states:

Choice-of-Law Principles

(1)   A Court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2)   When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a)   the needs of the interstate and international systems,

(b)   the relevant policies of the forum,

(c)   the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d)   the protection of justified expectations,

(e)   the basic policies underlying the particular field of law,

(f)   certainty, predictability and uniformity of result, and

(g)   ease in the determination and application of the law to be applied.

RESTATEMENT § 6.

and Gator Apple, a Florida limited liability company, had its headquarters in Palm Beach, Florida. Texas had no relationship with the franchise agreement at the time it was signed.

Gator Apple argues we must consider the relationship Texas had with the Apple Texas employees who were hired by Gator Apple. However, "contracts should be governed by the law the parties had in mind when the contract was made," *Sonat Exploration Co.*, 271 S.W.3d at 236, and we have found no authority for the proposition that the choice-of-law analysis should be based on facts existing at the time of the breach that did not exist when the contract was executed. Indeed, such an analysis would seemingly run afoul of the principles of "protection of justified expectations" and "certainty, predictability, and uniformity of result" espoused by section 6 of the Restatement. We have also found no authority that the location of a third-party beneficiary of a contract impacts a choice-of-law provision agreed to by the parties to the contract. We conclude that, at the time the franchise agreement was entered into, there was not a state with a more significant relationship to the transaction than Kansas. Accordingly, neither exception set out in section 187 of the Restatement overrides the choice-of-law provision in the franchise agreement.

Gator Apple finally argues that Apple Texas is a third-party beneficiary of only section 22 of the franchise agreement and, because section 22 is not subject to the choice-of-law provision of the franchise agreement, Apple Texas is not entitled to rely on Kansas law. However, we have already determined that Applebee's and Gator Apple's intent, as expressed in the franchise agreement, was that the choice-of-law provision applied to a breach of section 22 and to the enforceability of the liquidated damages clause. Accordingly, we need not determine whether Apple Texas is a third-party beneficiary of the choice-of-law provision. *See* TEX. R. APP. P. 47.1.

–17–

We conclude the trial court did not err by determining that Kansas law applied to Apple Texas's breach of contract claim against Gator Apple and to the liquidated damages provision in section 22 of the franchise agreement. Accordingly, we resolve Gator Apple's first issue against it.

*Recoverability of Liquidated Damages*

In its second issue, Gator Apple contends that, under either Kansas or Texas law, the trial court erred by determining the liquidated damages provision was valid and enforceable. Because we have determined the trial court properly applied Kansas law to the issues in this case, we will review Gator Apple's complaint solely under Kansas law.[7]

Gator Apple asserts the liquidated damages provision in section 22 of the franchise agreement is an unenforceable penalty because (1) the amount of damages had no relation to the anticipated costs of replacing an employee and was not intended to reflect such costs; (2) the damages associated with a breach of section 22 would have been simple to calculate and would have been comprised of recruiting fees, relocation costs, and lost productivity during training; and (3) it fixes an unreasonably large measure of damages. As the party objecting to the liquidated damages clause, Gator Apple had the burden to demonstrate the clause was unenforceable. *Carrothers Constr. Co., L.L.C. v. City of S. Hutchinson*, 207 P.3d 231, 241 (Kan. 2009) ("By placing the burden of proof on the party challenging a liquidated damages clause, we promote a public policy favoring settlement and avoidance of litigation, and allowing parties to make, and live by, their own contracts.").

"[A] liquidated damages clause in a contract is an advance settlement of the anticipated actual damages arising from a future breach." *Id.* at 241. It allows contracting parties to protect

---

[7] Apple Texas asserts Gator Apple waived this complaint by failing to timely plead it. Regardless of whether this issue was preserved for appellate review, we conclude it has no merit.

–18–

themselves against the difficulty, uncertainty, and expenses involved when trying to ascertain actual damages. *Id.* "Given this desirable goal, it is well established that parties may stipulate at the time of contracting to a set damages amount for a breach of that contract, as long as the liquidated damages provision is not a penalty." *Id.*

A penalty in a contract is a security for performance while a liquidated damages provision requires a sum certain to be paid in lieu of performance. *Id.*

> In determining whether contractual agreements are to be treated as penalties or as liquidated damages, courts look behind the words used by the contracting parties to the facts and the nature of the transaction. The use of the terms "penalty" or "liquidated damages" in the instrument is of evidentiary value only. It is given weight and is ordinarily accepted as controlling unless the facts and circumstances impel a contrary holding. The instrument must be considered as a whole, and the situations of the parties, the nature of the subject matter and the circumstances surrounding its execution taken into account. There are two considerations which are given special weight in support of a holding that a contractual provision is for liquidated damages rather than a penalty—the first is that that amount stipulated is conscionable, that it is reasonable in view of the value of the subject matter of the contract and of the probable or presumptive loss in case of breach; and the second is that the nature of the transaction is such that that amount of actual damages resulting from default would not be easily and readily determinable.

*Id.* (quoting *Beck v. Megli*, 114 P.2d 305, 308 (Kan. 1941)). This analysis is made from a prospective view only. *Id*. at 235, 243. "[T]he reasonableness of a liquidated damages clause in a contract deliberately entered into should be determined with regard to the conditions of the parties existing at the time the contract was executed, not from hindsight after the contract is breached." *Id.* at 235. "If the amount of actual damages is made an issue in the enforcement of every contract with a liquidated damages provision, the very purpose of the agreement is undermined." *Id.* at 243.

Applebee's and Gator Apple characterized section 22 of the franchise agreement as "liquidated damages," not as a penalty. There is no evidence about the value of the subject matter of the franchise agreement or of any specific employee to a franchise. There is also no evidence about whether three times an employee's annual salary as liquidated damages for a

–19–

breach of section 22 is reasonable in light of those values. The summary judgment evidence showed Applebee's contemplated damages attributable to the loss of a manager-level employee could include fees paid to a search firm to find replacement candidates; costs to relocate a replacement candidate; loss of productivity while the new employee is trained; loss in sales, productivity, and good will between existing management and staff; and lost profits. Further, there was evidence that, even if a manager was replaced by an existing employee, there was a "ripple down effect" that affected costs as lower-level employees were promoted and trained for their new positions. Both Rothschild and Dharod believed these costs were difficult to estimate. Although Georgas opined that a franchisee would have minimal or no costs relating to finding, relocating, and training a new employee, he did not address the other costs related to the loss of a manager-level employee. We conclude that Gator Apple failed to meet its burden of establishing the liquidated damages provision in section 22 was a penalty.

Relying on a provision of Kansas's version of the Uniform Commercial Code,[8] Gator Apple also contends the liquidated damages provision is void because it is an unreasonably large amount of damages. Gator Apple argues the actual damages associated with a breach of section 22 would have been simple to calculate and would have been comprised of recruiting fees, relocation costs, and lost productivity during training, Applebee's had an internal policy of requiring a franchisee hiring an Applebee's employee to pay only fifty percent of an employee's annual salary, each of the employees in this case fell within the category of individuals for whom Applebee's typically waived any fees, and Apple Texas's costs associated with replacing DiMeo were due solely to Apple Texas's decision to terminate his employment. However, the summary judgment evidence established that Applebee's internal policy was promulgated in 2005 and did not exist at the time the franchise agreement was signed in 1998. Further, the policy allowed

---

[8] *See* KAN. STAT. ANN. § 84-2-718(1) (1965).

Applebee's to recoup only its costs relating to recruiting, relocating, and training a new manager, applied only to Applebee's managers and not the managers of franchisees, and applied only if the franchisee obtained a letter of release from Applebee's to discuss employment opportunities with the Applebee's manager. If a franchisee did not obtain a letter of release before discussing employment opportunities with an Applebee's manager, the liquidated damages provision in section 22 applied, regardless of whether the manager was leaving voluntarily or had been terminated.

Gator Apple did not carry its burden of producing summary judgment evidence establishing the facts and circumstances in this case compel a determination that the liquidated damages in section 22 of the franchise agreement constituted a penalty or that the amount of damages specified was fixed at an unreasonably large amount. We conclude the trial court did not err by determining that liquidated damages provision in section 22 of the franchise agreement was enforceable under Kansas law. We resolve Gator Apple's second issue against it.

*Issues of Fact*

In its third issue, Gator Apple argues the trial court erred by granting summary judgment because there are issues of material fact regarding breach, causation, and damages. Gator Apple specifically asserts there are fact issues regarding whether (1) Apple Texas provided releases to DiMeo and Pitts, (2) Apple Texas waived its breach of contract claim by conduct, (3) hiring the employees was permissible in light of Applebee's policies of limiting or waiving fees under section 22, and (4) Gator Apple caused Apple Texas's damages.[9]

Gator Apple first asserts there are material issues of fact about whether it breached the franchise agreement because Apple Texas provided written releases allowing Applebee's to

---

[9] Apple Texas asserts that Gator Apple's amended answer asserting the affirmative defenses of release and waiver was not timely filed and, therefore, Gator Apple may not raise these arguments on appeal. We conclude that, even if Gator Apple preserved these arguments for appeal, there are no material issues of fact that would preclude summary judgment.

–21–

discuss employment opportunities with DiMeo and Pitts. Gator Apple admitted in response to Apple Texas's request for disclosure that it did not obtain letters of release from Apple Texas to discuss employment opportunities with either DiMeo or Pitts. Further, the release provided to DiMeo allowed him to discuss employment opportunities only with Applebee's. Although Hull indicated he thought this release was sufficient to allow DiMeo to discuss employment opportunities with Gator Apple, he also stated Rothschild thought the release was specific to Applebee's and that he encouraged Georgas to contact Dharod. The only evidence relating to the scope of the release provided to Pitts was that he was interested in a "position with Applebee's corporate." There is no summary judgment evidence that Gator Apple obtained a letter of release from Apple Texas to discuss employment opportunities with either DiMeo or Pitts. Accordingly, we conclude there is not an issue of fact regarding whether Gator Apple breached section 22 of the franchise agreement.

Gator Apple next asserts there are fact issues regarding whether Apple Texas waived its breach of contract claim by conduct through providing releases to DiMeo and Pitts, accepting releases in order to hire employees from other franchisees and from Applebee's, and routinely electing not to enforce the requirements of its franchise agreement relating to letters of release. Gator Apple also contends there is an issue of fact regarding whether its hiring of DiMeo, Pitts, Justice, Adams, and Haakinson was permissible in light of Applebee's policy of limiting or waiving fees under section 22. Gator Apple finally argues that, as a third-party beneficiary to the franchise agreement, Apple Texas is bound by any waiver of rights by Applebee's.

Waiver is an intentional relinquishment of a known right. *Postal Sav., & Loan Ass'n v. Freel*, 698 P.2d 382, 384 (Kan. Ct. App. 1984). A party's intention regarding waiver can be inferred from conduct. *Id.* "However, no such inference of waiver can be drawn when the unambiguous language of the contract states a contrary intention." *Id.* In this case, the franchise

agreement specifically provides that any waiver of a breach or default under the agreement shall not be deemed a waiver of any subsequent or continuing breach or default. Accordingly, there is no issue of fact regarding whether Apple Texas, either directly or as a third-party beneficiary of Applebee's, waived its right to assert its breach of contract claim against Gator Apple.

Finally, Gator Apple asserts there are issues of fact regarding whether Apple Texas's own decisions and conduct caused the employees to leave Apple Texas and, therefore, Apple Texas was not damaged by Gator Apple's alleged breach. Regardless of a manager-level employee's reason for leaving Apple Texas, Gator Apple was precluded by section 22 of the franchise agreement from hiring that employee within six months without Apple Texas's consent. Therefore, the reason for an employee leaving Apple Texas does not create a material issue of fact as to whether Gator Apple breached the contract. Further, the amount of actual damages is not an issue in a suit brought on a contract with an enforceable liquidated damages provision. *See Carrothers*, 207 P.3d at 243; *Beck*, 114 P.2d at 308.

We conclude Gator Apple failed to establish there was an issue of material fact that precluded summary judgment in favor of Apple Texas. We resolve Gator Apple's third issue against it.

**Motion for New Trial**

In its fourth issue, Gator Apple contends the trial court erred by failing to grant Gator Apple a new trial in the interests of fairness and justice. Gator Apple's brief contains no argument on this issue. An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h), (i). Failure to cite applicable authority or provide substantive analysis waives an issue on appeal. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). We conclude

nothing is presented for our review on this issue.  *Id.*  We resolve Gator Apple's fourth issue against it.

We affirm the trial court's judgment,

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

121369F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GATOR APPLE, LLC, Appellant

No. 05-12-01369-CV     V.

APPLE TEXAS RESTAURANTS, INC., Appellee

On Appeal from the 134th Judicial District Court, Dallas County, Texas,
Trial Court Cause No. 11-6565.
Opinion delivered by Justice Fillmore, Justices FitzGerald and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Apple Texas Restaurants, Inc. recover its costs of this appeal and the full amount of the trial court's judgment from appellant Gator Apple, LLC and from the cash deposit in lieu of cost bond. After all costs have been paid, the clerk of the 134th Judicial District Court is directed to release the balance, if any, of the cash deposit to Gator Apple, LLC .

Judgment entered this 5th day of March, 2014.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE