**AFFIRMED and Opinion Filed December 31, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00107-CV**

**LAURA FORD, Appellant**
**V.**
**SILVERADO AUTO SALES, RON QUINLAN, SR. AND RON QUINLAN, JR., Appellees**

**On Appeal from the County Court at Law No. 2**
**Grayson County, Texas**
**Trial Court Cause No. 2019-2-075CV**

## MEMORANDUM OPINION

Before Justices Myers, Nowell, and Evans
Opinion by Justice Evans

Laura Ford appeals the trial court's summary judgment in favor of Silverado Auto Sales, Ron Quinlan, Sr., and Ron Quinlan, Jr., on Ford's claims arising from her purchase of an automobile. In seven issues, Ford argues the trial court erred in allowing Silverado to claim Ford did not timely file her motion for summary judgment, striking Ford's motion for summary judgment as untimely, denying Ford's motion for rehearing, allowing Silverado to give one day of notice before the hearing on the motions for summary judgment, and "asking for oral argument for the Summary Judgments." Ford also appears to argue that the underlying contract

was unconscionable and her motion for summary judgment established that Silverado defrauded her. We affirm the trial court's judgment.

In April 2019, Ford filed her original petition seeking "recovery of the purchase money for her vehicle that was wrongfully repossessed" by Silverado. The petition alleged that, on February 22, 2018, she entered into a motor vehicle retail installment contract with Silverado in connection with the purchase of a 2013 Hyundai Sonata. Ford alleged Ron Quinlan, Jr., was "the authorized agent to sell the vehicle" to Ford, and Ron Quinlan, Sr., was the owner of Silverado. The terms of payment were $300.00 per month beginning March 22, 2018 and ending October 22, 2022. The total purchase price for the vehicle was $13,900.00, less a $3,000.00 down payment, leaving $10,900.00 due and owing.

Ford alleged that, while driving the 2013 vehicle off the car lot for the first time, she noticed the Check Engine Light was on and, when she called Silverado to inform them of this, she was told to bring it to the Hyundai dealership to find out the problem. Ford "was told that the part that was defective was under warranty, but she would have to pay $264.05 in labor costs, which she in fact paid." Ford quoted the statement in Silverado's original answer that "We Gave Her Credit to Her First Payment and a Discount of $1,000.00 Off of Purchase Price," which Ford characterized as "a discount amount of $1264.05" she calculated as "$264.05 repair cost and $1,000.00 discount." Ford claimed that, from the "first payment date on March 22, 2018 until October 22, 2018, [she] made 7 payments of $300 for a total

of $2,100." Ford also claimed she made partial payments, including the $1264.05 credit, of $2399.05 between March and the end of September 2018. Thus, Ford argued, "when one looks at the total payments made and the total credits given, the amount of $2,399.05 is in excess of $299.05 the total amount owed of $2,100!" Ford quoted an October 25, 2018 text from Ron Quinlan, Sr., which stated, "These are the payments you made so far: 4/30 $150, 5/31 $120, 6/23 $290, 8/2 $165, 9/28 $220 = $945. You should have made $2100 in payments so far." Citing Silverado's ledger submitted in its original answer and the credit of $1264.05 Ford received from Silverado, Ford reiterated her argument that "the actual amount paid was $2399.05." Nevertheless, Ford argued, Silverado repossessed the vehicle in breach of the purchase agreement. Ford asserted a claim of fraudulent inducement and sought punitive damages and a return of all monies she paid to Silverado.

On December 3, 2019, Silverado filed a traditional and no evidence motion for summary judgment. Silverado alleged Ford purchased the vehicle "AS IS," financed a principal amount of $12,020.81, agreed to make 55 payments of $300 and a final payment of $195.84, and agreed to continuously insure the vehicle. After the purchase, the vehicle needed repairs, and Silverado agreed to deduct the cost of the repairs from the sale price. Silverado alleged Ford failed to make the loan payments and failed to keep the vehicle insured, so Silverado repossessed the vehicle. Attached to the motion was a copy of the retail installment contract between Ford

and Silverado. The contract contained a "voluntary return of collateral" document signed by Ford that provided as follows:

> I (we) agree to voluntarily return the aforementioned vehicle, which is the secured collateral under the above referenced contract. I (we) consent to your acceptance of the collateral in full satisfaction of the remaining indebtedness, and I (we) relinquish all rights to the vehicle. I (we) waive my (our) right to notification of disposition of collateral and my (our) right to required disposition of the vehicle under Section 9-620(e) of the Uniform Commercial Code. I (we) release to [sic] you from any claim or liability, in tort or breach of contract, or violation of the Texas Consumer Protection Act or the Texas Finance Code. You agree to release me (us) from any liability with regard to our obligations under the Contract, and agree not to pursue any deficiency against me (us).

The contract also contained a document signed by Ford granting Silverado the right to repossess the vehicle if Ford failed "to make any payment in accordance with the retail installment contract" and the right to conduct the repossession at "any time of the day or night" without notice to Ford. Also attached to the motion was a "Buyer's Guide" document signed by Ford and stating in large bold type that the "warranties for this vehicle" were "AS IS – NO DEALER WARRANTY." Finally, the motion contained an "agreement to provide insurance" signed by Ford and requiring Ford to maintain continuous insurance on the vehicle. In the event Ford failed to maintain insurance on the vehicle, the agreement authorized Silverado to obtain insurance and add the premium to Ford's next payment due under the installment contract.

In an affidavit attached to the motion, Ron Quinlan, Sr. restated the facts as alleged in the motion and again stated that Ford failed to make the loan payments as

–4–

agreed and failed to keep the vehicle insured, so the vehicle was repossessed. Also attached to the motion was a May 11, 2018 letter from GEICO insurance company providing Silverado with notice that Ford's insurance policy on the vehicle was terminated.

Pursuant to a July 22, 2019 docket control order, any motion that requested summary judgment under Rule 166a, dismissal, judgment as a matter of law, or other dispositive relief as to any claim had to be filed no later than thirty (30) days prior to the trial date. On July 23, 2019, the trial court signed an order setting the case for trial on January 7, 2020. Thus, the deadline for Ford to file a motion for summary judgment was December 8, 2019.

The July 22, 2019 order further provided, "A party opposing a motion has **14 days (21 days for dispositive motions)** from the date the motion was served in which to file a response and any supporting documents, after which the Court will consider the submitted motion for decision." The docket control order specifically provided, "[A]ll motions shall be considered by **submission** and without oral argument." By order signed December 4, 2019, the trial court set Silverado's motion for summary judgment for submission on December 26, 2019. (In the clerk's record, there is no other notice or order setting Silverado's motion for summary judgment for hearing or submission on a different date). Therefore, Ford's response to Silverado's motion for summary judgment was due December 26, 2019.

On December 19, 2019, Ford filed a traditional and no-evidence motion for summary judgment, which was not supported by any affidavits. Ford did not file a response to Silverado's motion for summary judgment. On December 31, 2019, Silverado filed a response to Ford's motion for summary judgment. On January 1, 2020, Ford filed an amended motion for summary judgment. Again, the motion was not supported by any affidavits. On January 6, 2020, Silverado filed a motion to strike Ford's original and amended motions for summary judgment as untimely filed.

On January 7, 2020, instead of commencing trial the court heard Silverado's motion for summary judgment and Silverado's motion to strike Ford's motion for summary judgment. The hearing began with this colloquy:

> THE COURT: This case is currently set for trial today but in light of the competing motions for traditional and no evidence summary judgment, and defendant's motion to strike plaintiff's original and amended traditional and no evidence motion for summary judgment, the Court reset this case for trial and scheduled a hearing on the summary judgment motions today. Is the plaintiff ready to proceed?
>
> [FORD'S COUNSEL]: Plaintiff is ready, yes, Your Honor.
>
> THE COURT: Is the defendant ready to proceed?
>
> [SILVERADO'S COUNSEL]: Yes, Your Honor.
>
> THE COURT: Very well.

At the hearing, although Ford's counsel denied personally seeing the July 22, 2019 docket control order until a few days before the hearing, he admitted his secretary may have had it and conceded Ford was bound by it. Nevertheless, Ford's counsel argued all applicable dates by counting backward from the date of trial on which the

trial court heard the pending motions. But when questioned by the trial court, Ford's counsel admitted Ford's original and amended motions for summary judgment were not timely. The trial court stated, "[I]f you don't timely file then the Court will not entertain what is untimely filed. . . ." So, the trial court granted Silverado's motion to strike Ford's original and amended motions for summary judgment.

The trial court then heard Silverado argue its motion for summary judgment. Ford in turn argued from the allegations in Ford's pleading. When questioned by the trial court, Ford's counsel could not recall whether he had filed a response to Silverado's motion for summary judgment and did not provide the trial court a copy file-marked by the clerk when the trial court asked for a copy since there was no response in the court's file. The trial court then ruled,

> THE COURT: There are no affidavits or other admissible evidence to support the assertions set out in the paperwork. And the plaintiff did not file a response to the defendant's motion for summary judgment, either traditional or no evidence setting forth through that response admissible evidence contradicting the assertions of the defendant in its motion.

The trial court then rendered summary judgment for Silverado.

On January 15, 2020, Ford filed a motion for rehearing, which the trial court denied the next day. On January 17, 2020, the trial court signed a summary judgment ordering that Ford take nothing and noting, in part, that Ford did not "file opposing affidavits or other written response" to Silverado's motion for summary judgment. This appeal followed.

–7–

In her first and second issues, Ford argues the trial court erred in allowing Silverado to claim Ford did not timely file her motion for summary judgment and requesting the trial court to strike Ford's motion. In making these arguments, Ford argues her motion for summary judgment filed on December 19, 2019 was timely because rule 166a provides that a motion for summary judgment shall be filed at least twenty-one days before the time specified for hearing. *See* TEX. R. CIV. P. 166a(c). As to her deadline to file a response to Silverado's motion, Ford argues rule 166a permitted her to file and serve her response not later than seven days prior to the day of hearing. *See id.*

We review a trial court's enforcement of a scheduling order for an abuse of discretion. *G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 542 (Tex. App.—Dallas 2005, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules or principles. *Id.* Rule 166 of the Texas Rules of Civil Procedure allows a trial court to create various deadlines to control the disposition of the various phases of a case, and provides that "such order . . . shall control the subsequent course of action[.]" TEX. R. CIV. P. 166(p); *see generally Clanton v. Clark*, 639 S.W.2d 929 (Tex. 1982) (trial court has discretion to manage its docket). Thus, the trial court's docket control order controlled the applicable deadlines in this case and, under that order, Ford's motion for summary judgment was untimely. *See id.* Ford has not shown the trial court

abused its discretion when it enforced its docket control order and struck Ford's untimely motion for summary judgment.

As regards the deadline for Ford's response to Silverado's motion for summary judgment, rule 166a(c) provides:

> Except on leave of court, with notice to opposing counsel, the motion [for summary judgment] and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response.

TEX. R. CIV. P. 166a(c). So, according to the rule, all deadlines are counted back from the date of the hearing. When a movant files and sets a motion for summary judgment twenty-one days after filing, the non-movant has only fourteen days to file a response. Here, consistent with considering summary judgment motions by submission, the docket control order provided every non-movant twenty-one days within which to respond to motions for summary judgment. Further, the trial court set Silverado's motion for summary judgment for submission allowing twenty-one days from the date of its setting order for Ford to respond. Our record does not contain a notice of summary judgment hearing on the day of trial. Rather, the trial court, having taken the summary judgment under submission but not having ruled by the day of trial, heard counsel argue the pending motions at trial. Ford has not argued or cited any authority that the trial court abused its discretion by balancing the judicial efficiency of setting summary judgment motions for submission, and allowing all non-movants twenty-one days to respond thereby exceeding rule

–9–

166a(c)'s minimum of fourteen days to respond.  We overrule Ford's first and second issues.

In her third issue, Ford argues the trial court erred by not granting her motion for rehearing.  In making this argument, Ford repeats her argument that the deadlines set out in rule 166a operate in such a way that her motion for summary judgment was timely.  Because we have already rejected Ford's arguments in her first two issues, we overrule Ford's third issue.

In her fourth issue, Ford argues the trial court erred by allowing Silverado to "give ONE DAY NOTICE on January 6 before the hearing date on the summary judgment motions wherein [Ford] had no time to respond or object."  Ford's argument under this issue consists of a single sentence that contains no citation to authority, and she appears to complain that Silverado's motion to strike was filed on January 6, 2019, one day before the hearing on January 7.  An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h), (i).  Failure to cite applicable authority or provide substantive analysis waives an issue on appeal. *Gator Apple, LLC v. Apple Texas Restaurants, Inc.*, 442 S.W.3d 521, 538 (Tex. App.—Dallas 2014, pet. denied).  In addition, Ford made this argument to the trial court at the summary judgment hearing on the day of trial.  In response to the trial court's questions, Ford's counsel conceded his staff may have been aware of the

filings and orders in the case. We conclude nothing is presented for our review on this issue, but if there was a sufficient argument we would reject it. *Id.*

In her fifth issue, Ford argues the trial court "erred by asking for oral argument for the Summary Judgments." Ford complains the parties should not have appeared in court at the hearing on the motions for summary judgment, and the case should have been "resolved by submission." In support of this assertion, Ford cites rule 166a's provision requiring that "No oral testimony shall be received at the hearing." *See* TEX. R. CIV. P. 166a(c). Ford appears to conflate the appearance of counsel at trial at which the trial court listened to counsel argue about the pending motions with prohibited "oral testimony" at such a hearing. Ford cites no authority, and we have found none, that would support such an argument. In fact, rule 166a(c) specifically allows for a hearing on a motion for summary judgment. *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998).

Also in her fifth issue, in a single sentence without citation to authority or the record, Ford asserts that her motion for summary judgment "showed overwhelming documented proof" that Silverado "defrauded [Ford] out of her money and her car." We conclude this additional assertion presents nothing for our review. *See Gator Apple*, 442 S.W.3d at 538. As we pointed out above, the trial court did not abuse its discretion in striking Ford's untimely filed original and amended motions for summary judgment. Accordingly, we overrule Ford's fifth issue.

In her sixth issue, Ford argues the underlying retail installment contract was "a Predatory Contract that is one-sided and favors" Silverado, and the contract was unconscionable and unlawful. In making this argument, Ford attacks Silverado's "legal conclusion statement," presumably made in the context of Silverado's motion for summary judgment, that "Silverado did not wrongfully repossess the vehicle as a matter of law."

Silverado filed a combined traditional and no-evidence summary-judgment motion. *See* TEX. R. CIV. P. 166a(c), (i). We review no-evidence motions under the same legal sufficiency standard as a directed verdict. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018). Under this standard, the nonmovant has the burden to produce more than a scintilla of evidence to support each challenged element of its claims. *Id.*; *see Sandberg v. STMicroelectronics, Inc.*, No. 05-18-01360-CV, 2020 WL 1809469, at *3 (Tex. App.—Dallas Apr. 9, 2020, no pet. h.) ("we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented."). In a traditional motion, the movant has the burden to show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A defendant is entitled to summary judgment if it conclusively negates at least one element of the plaintiff's claim. *Painter*, 561 S.W.3d at 130. When reviewing either type of summary-judgment motion, we view the evidence "in the light most favorable to the nonmovant, crediting evidence a reasonable jury could

–12–

credit and disregarding contrary evidence and inferences unless a reasonable jury could not." *Id.*

When a party files a hybrid summary judgment motion on both no-evidence and traditional grounds, we generally first review the trial court's judgment under the no-evidence standard of review. *Rico v. L-3 Commc'ns Corp.*, 420 S.W.3d 431, 438-39 (Tex. App.—Dallas 2014, no pet.). Should we determine summary judgment was appropriate under the no-evidence standard, we need not address issues related to the traditional summary judgment motion. *Id.* at 439.

Ford appears to take issue with the underlying contract's provision, set forth in "exceedingly small letters," that "You have thoroughly inspected, accepted, and approved, the vehicle in all respects." However, Ford does no more than point out this provision. Ford also notes there is a place for the parties to sign the contract twelve lines into the contract, and she calls this "scamming" and "nicely concealed" but does not address the legal significance of this provision. Accordingly, we conclude these arguments present nothing for our review. *See Gator Apple*, 442 S.W.3d at 538.

Ford notes the "as-is" provision in the underlying contract and cites *Bishop v. Creditplex Auto Sales L.L.C.*, No. 05-15-00395-CV, 2016 WL 3453633, at *6 (Tex. App. June 23, 2016) as a "win for appellant." *See id.* (as-is clause did not conclusively negate causation because evidence raised fact issue regarding whether Creditplex's fraudulent representation or information concealment induced Bishop

–13–

to buy car). *Bishop* was a case in which appellees moved for directed verdict at trial arguing solely that the as-is clause negated causation as a matter of law. *Id.* at *2. We note Silverado did not rely on the "as-is" provision as a basis for summary judgment in its favor. Accordingly, we conclude *Bishop* is not controlling authority in this case.

As argued in her brief outside the discussion related to her enumerated issues and raised again in her sixth issue, Ford complains of "blank space" at the end of the contract. Citing section 348.112 of the finance code, Ford argues her acknowledgement of delivery of a copy of the retail installment contract must appear "directly above the buyer's signature." *See* TEX. FIN. CODE ANN. § 348.112(a)(2). Ford argues her contract with Silverado violates this provision because the "customer's signature is approximately four (4) inches below the acknowledgment." Ford is incorrect. The copy of the contract attached to her amended motion for summary judgment contains the following acknowledgement in all capital letters in bold type on the first page of the contract:

> **BUYER'S ACKNOWLEDGEMENT OF CONTRACT RECEIPT: YOU AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT.**

We note Ford's signature appears directly below this acknowledgement, and several of the letters in Ford's signature actually overlap the acknowledgement. We conclude the placement of the acknowledgement did not violate section 348.112 of

the finance code. Having reviewed Ford's arguments, we conclude the trial court did not err in granting summary judgment in favor of Silverado. *See Painter*, 561 S.W.3d at 130. We overrule Ford's sixth issue.

In her seventh issue, Ford argues the trial court "erred in not finding that Appellant's Motion for Summary Judgment contained sufficient facts, evidence and proof that Appellant, Laura Ford, documented proof that the Appellees defrauded Appellant out of her money and her car." In making this argument, Ford renews her attack on the underlying contract as predatory, one-sided, unconscionable, and unlawful. Because we have rejected these identical arguments against the underlying contract's validity, we overrule Ford's seventh issue.

In an argument raised outside the scope of her enumerated issues, Ford cites the installment contract's provision stating that "You will be in default if you do not pay any amount" when it is due. Ford includes a copy of Silverado's payment ledger showing she made only partial payments and argues these payments were "any amount" payments, and the contract payments "had been adhered to since 'any amount' was in fact paid." Without any authority to support her construction of this language, Ford ignores the contract's terms of payment requiring payments of $300.00 per month beginning March 22, 2018 and ending October 22, 2022. We reject Ford's construction of the "any amount" language contained in the contract.

We affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

200107F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LAURA FORD, Appellant

No. 05-20-00107-CV      V.

SILVERADO AUTO SALES, RON
QUINLAN, SR. AND RON
QUINLAN, JR., Appellees

On Appeal from the County Court at
Law No. 2, Grayson County, Texas
Trial Court Cause No. 2019-2-
075CV.
Opinion delivered by Justice Evans.
Justices Myers and Nowell
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees SILVERADO AUTO SALES, RON QUINLAN, SR. AND RON QUINLAN, JR. recover their costs of this appeal from appellant LAURA FORD.

Judgment entered December 31, 2020.